IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ADAM FRIED, ADMINISTRATOR,** | ) | CASE NO.:  1:22-CV-00061 |
| **ESTATE OF DESMOND FRANKLIN,** | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **JOSE GARCIA**, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT JOSE GARCIA'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Jose Garcia hereby moves for summary judgment pursuant to Fed.R.Civ.P.
56(a).  A memorandum and exhibits in support of this motion are attached hereto and incorporated
herein.

Respectfully submitted,

MARK D. GRIFFIN (0064141)
Director of Law

By:  */s/ Elena N. Boop*
Elena N. Boop (0072907)
Chief Trial Counsel
James R. Russell, Jr. (0075499)
Chief Assistant Director of Law
Affan Ali (0085698)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106

Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: EBoop@clevelandohio.gov
JRussell2@clevelandohio.gov
Aali2@clevelandohio.gov


*/s/ Thomas J. Cabral*
Thomas J. Cabral (0033041)
1215 Superior Avenue, 7th Floor
Cleveland, OH 44114
Tel: (216) 522-1172
Email:  tcabral@gallaghersharp.com
Gallagher Sharp, LLP

*Attorneys for Defendant Jose Garcia*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................v

MEMORANDUM IN SUPPORT OF MOTION..........................................................1

    A.     STATEMENT OF THE CASE.............................................................1

    B.     STATEMENT OF ISSUES ................................................................1

    C.     STATEMENT OF FACTS .................................................................1

          1.     Off-Duty Officer Garcia calls "911" to report "shots fired" and that someone just "swung a gun" at him...........................................................1

          2.     A blood-soaked gun is immediately recovered from the top of the unresponsive driver's feet ...........................................................2

          3.     A few minutes earlier, the driver threatens to shoot Garcia, chases him in his car, tries to cut him off and produces a gun as he continues to chase Garcia.  Garcia shoots him in self-defense .........................................3

          4.     Forensic evidence shows that the first round shattered the passenger-side window and struck Franklin in the right temple; Badley's jacket and the gun recovered from Franklin's feet were covered in pulverized glass from the shattered passenger-side window ...................................................6

    D.     ARGUMENT .........................................................................................7

          1.     Fed.R.Civ.P. 56(a) requires a *genuine* dispute of *material* fact in order to overcome a motion for summary judgment .................................................7

          2.     The Court has an independent duty to determine whether Garcia acted under the color of law ..............................................................8

          3.     If the court finds that Garcia acted under the color of law, he is entitled to qualified immunity because the force was objectively reasonable..........9

               *a.*     *There is no genuine dispute over the fact that Officer Garcia saw Franklin produce a gun split seconds before he shot him*...........................................................10

               *b.*     *Garcia's use of force was objectively reasonable* .........................13

          4.     Independent from the Court's determination of the constitutional question, Garcia is entitled to qualified immunity because the alleged constitutional violation was not clearly established...................................15

5.      Plaintiff's state-law claims for survivorship (Claim 2), negligence (Claim 3) and intentional infliction of emotion distress (Claim 4) are barred by the one-year statute of limitations ........................................17

6.      Plaintiff's survivorship claim fails because Franklin suffered no *conscious* pain and suffering ........................................................................18

7.      R.C. 2307.60(B) is a complete bar to Plaintiff's state-law claims because Franklin's commission of a felony was the direct and proximate cause of his injuries and death ...................................................19

8.      For the same reasons that Plaintiff's claims under 42 U.S.C. §1983 fail, so do his state-law claims fail pursuant to Ohio Political Subdivision Tort Immunity, R.C. Chapter 2744 ...........................................................21

9.      Plaintiff's state-law claims fail because Garcia was entitled to use deadly force is self defense ........................................................................21

10.     Plaintiff is not entitled to punitive damages ...............................................23

E.      CONCLUSION........................................................................................................23

CERTIFICATE OF SERVICE .........................................................................................................25

CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION ...............................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page:**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).............. 7

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011)............................................................15

*Beavers v. Knapp*, 2008-Ohio-2023 (10th Dist.). ........................................................................ 23

*Boyd v. Baeppler*, 215 F.3d 594 (6th Cir.2000)............................................................................ 13

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir.2002). ......................................................................... 10

*Bush v. Compass Group USA, Inc.*, 683 Fed.Appx. 440 (6th Cir.2017). ................................. 7, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)......................... 7

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir.2009)........................................ 10, 12, 17, 21

*Curtiss v. Charter Communications, Inc.*, No. 1:21-cv-543, 2023 WL 6258257, *8 (N.D. Ohio, Sept. 26, 2023) ................................................................................................................... 19

*Delcambre v. Delcambre*, 635 F.2d 407 (5th Cir.1981), ................................................................ 8

*Deir v. Lake County*, Case No. 1:12-cv-110, 2014 WL 494570, *3 (N.D. Ohio, Feb. 6, 2014)... 18

*District of Columbia v. Wesby*, 583 U.S. 48, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018), ........ 15

*Estate of Sowards v. City of Trenton*, 125 Fed.Appx.31 (6th Cir.2005)........................................ 13

*Flory v. New York Cent. Rd. Co.*, 170 Ohio St. 185, 163 N.E.2d 902 (Ohio 1959)...................... 18

*Gambrel v. Knox Cty.,* 25 F.4th 391 (6th Cir. 2022)..................................................................... 15

*Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). ............................. 10

*Hunte v. Darby Borough*, 897 F.Supp. 839 (E.D.Pa.1995) ........................................................... 9

*Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ................................... 16

*Jeffreys v. City of New York*, 426 F.3d 549 (2nd Cir.2005)............................................................ 13

*Kelly v. Stanforth*, 647 Fed.Appx. 572 (6th Cir.2016) ................................................................. 17

*Kisela v. Hughes*, 584 U.S. ___, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018), ............................... 16

*Kuhar v. Marc Glassman, Inc.*, 2009-Ohio-2379 (8th Dist.) ........................................................ 17

*LaMusga v. Summit Sq. Rehab, LLC,* 2015-Ohio-5305 (2nd Dist.)............................................... 23

*Laverick v. Children's Hosp. Med. Ctr. Of Akron, Inc.*, 43 Ohio App.3d 201, 540 N.E.2d 305 (9th Dist. 1988). ....................................................................................................................... 19

*Layne v. Sampley,* 627 F.2d 12 (6th Cir.1980), ............................................................................ 8

*Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397 (6th Cir.2007).................................................. 15

*Love v. Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1988).................................................. 17

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)..................................... 16

*Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). ................................................................................................................. 7

*Mooneyhan v. Hawkins*, 129 F.3d 1264 (6th Cir.1997).................................................................. 8

*Mosier v. Evans*, 90 F.4th 541 (6th Cir.2024) .............................................................................. 16

*Mullenix v. Luna*, 577 U.S. 7, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)....................................... 16

*Mullins v. Cyranek*, 805 F.3d 760 (2015).............................................................................. 14, 21

*Nationwide Mut. Ins. Co. v. Wright,* 9th Dist. Lorain No. 95CA006190, 1996 WL 304205 ......... 19

*Neuens v. City of Columbus,* 275 F.Supp.2d 894 (S.D. Ohio, 2003) ............................................ 9

*Neuens v. City of Columbus,* 303 F.3d 667 (6th Cir. 2002) ............................................ 8

*O'Brien v. City of Grand Rapids,* 23 F.3d 990 (6th Cir. 1994). ............................................ 8

*Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ............................................ 9

*Pickrel v. City of Springfield,* 45 F.3d 1115 (7th Cir.1995) ............................................ 8

*Presnal v. Huey,* 657 Fed.Appx. 508 (6th Cir.2016)............................................ 12, 13

*Puskas v. Delaware County, Ohio,*............................................ 13, 14

*Redding v. St. Edward,* 241F.3d 530 (6th Cir.2001)............................................ 8

*Reigh v. Elizabethtown,* 945 F.3d 968 (6th Cir.2019) ............................................ 13

*Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 142 S.Ct. 4, 211 L.Ed.2d 164 (2021)............................................ 16

*Rubeck v. Huffman,* 54 Ohio St.2d 20, 374 N.E.2d 411 (1978) ............................................ 23

*Rudlaff v. Gillispie,* 791 F.3d 638 (6th Cir.2015) ............................................ 17

*Saleh v. Marc Glassman Inc.,* 2005-Ohio-6127 (8th Dist.) ............................................ 17

*Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, L.E.2d 686 (2007)............................................7

*Simmonds v. Genesee Cnty.,* 682 F.3d 438 (6th Cir.2012) ............................................ 15

*Stafford v. Columbus Bonding Ctr.,* 2008-Ohio-3948 (10th Dist.)............................................ 18

*Stengel v. Belcher,* 522 F.2d 438 (6th Cir.1875), ............................................ 8

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989)............................................7

*Thornton v. City of Columbus,* 727 Fed.Appx. 829 (6th Cir.2018)............................................ 13, 15

*TI Federal Credit Union v. DelBonis,* 72 F.3d 921 (1st Cir. 1995) ............................................ 8

*United States v. Tarpley,* 945 F.2d 806 (5th Cir.1991). ............................................ 8

*Untalan v. City of Lorain,* 430 F.3d 312 (6th Cir.2005)............................................ 9

*Whetstone v. Binner,* 146 Ohio St.3d 395, 2016-Ohio-1006, 57 N.E.3d 1111............................................ 23

*Whitlow v. City of Louisville,* 39 Fed.Appx. 2976th Cir.2002)............................................ 13

*Wilkerson v. City of Akron,* 906 F.3d 477, 482 (6th Cir.2018) ............................................ 13

**Statutes**

42 U.S.C. §1983 ............................................ 1, 8, 9, 21

R.C. 2305.111. ............................................ 18

R.C. 2305.21 ............................................18

R.C. 2307.60(B) ............................................ 19

R.C. 2307.60(b)(2)(b) ............................................ 19

R.C. 2307.60(B)(2)(b) and (3). ............................................ 20

R.C 2307.60(b)(3) ............................................ 19

R.C. 2307.601 ............................................ 9, 21

R.C. 2307.601(B) ............................................ 21

R.C. Chapter 2477 ............................................ 21

R.C. 2744.03(A)(6)(b) ............................................ 21

R.C. 2744.06(a)(3) ............................................1

R.C. 2901.05(B)............................................9

R.C. 2901.05(B)(1) ............................................ 21

R.C. 2901.09 ............................................9

R.C. 2903.21(A) ............................................ 21

R.C. 2923.111, ............................................ 21

R.C. 2923.13(A)(1) ................................................................................................ 20
R.C. 2923.13(B) ..................................................................................................... 20
R.C. 2923.16(B) ..................................................................................................... 21

**Other Authorities**

Fed.R.Civ.P. 56(a) ................................................................................................... 7
Cleveland Codified Ordinance §431.41 ....................................................................4
2008 Ohio Laws File 92(Sub. S.B. 184). ................................................................ 21
Ohio Jury Instructions, Chapter CV 303, Standards of Proof, Self-defense, defense of another,
    defense of residence in tort actions (Rev. 3/12/22). .................................................. 22

## MEMORANDUM IN SUPPORT OF MOTION

### A.     STATEMENT OF THE CASE.

This case arises from the death of Desmond Franklin, who threatened to shoot a plain-clothed off-duty police officer, chased him down the street in his car and produced a gun as soon as he caught up to the officer.  The off-duty officer Jose Garcia shot and killed Franklin in self-defense. Plaintiff filed a 42 U.S.C. §1983 excessive force claim, state-law survivorship claims, and a wrongful death action.  Jose Garcia moves for a judgment in his favor as a matter of law.

### B.     STATEMENT OF THE ISSUES.

If Officer Garcia acted under the color of law, he is entitled to qualified immunity.  His use of deadly force was objectively reasonable when he faced a deadly threat from someone who had just threatened to shoot him and was chasing him down the street with a gun.  Even if the Court finds that it was not objectively reasonable, the alleged constitutional violation was not clearly established.  If Jose Garcia did not act under the color of law, on the other hand, the federal claims must be dismissed.

Plaintiff's survivorship, negligence and intentional infliction of emotional distress claims are barred by the one-year statute of limitations.  Survivorship also fails because there is no evidence of conscious pain and suffering.  The remaining wrongful death (and all state-law claims) must fail because Jose Garcia acted in self-defense, Franklin's commission of a felony was the proximate cause of his death, and Garcia is entitled to immunity under R.C. 2744.03(a)(6). Finally, if wrongful death is the only surviving claim, Plaintiff is not entitled to punitive damages.

### C.     STATEMENT OF FACTS

#### 1.     Off-Duty Officer Garcia calls "911" to report "shots fired" and that someone just "swung a gun" at him.

On April 9, 2020, at 1:49 p.m., Cleveland's 911 system receives a call from off-duty Cleveland police officer Jose Garcia for "shots fired" at Pearl Road, Cleveland, OH, near Riverside

1

Cemetery.  (*See* Declaration of Brian McEntee, Ex. A,[1] Click here to listen to 911 audio.)  The officer is frantic, "right now the guy swung a gun at me trying to shoot at me right now; I shot back!"  (*Id.* at 00:28-00:34.)  A couple of minutes later, a commotion can be heard in the background.  Officer Garcia yells "Lopez, Lopez!"[2] (*Id.* 00:02:52.)  Officer Garcia is heard: "you tried to shoot me, you know that!  Where is the gun at?  Where is the m*** gun?  Where is the gun right now?  You were trying to shoot me up, you know that!  You don't do that!"  (*Id.*at 3:13-3:36.)

Officer Lopez was on her way to work in the second district of Cleveland Division of Police (CDP).  (Deposition of Dalia Lopez, Feb.9, 2023, p. 29, Ex. B.)  As she was driving to work on West 25th/Pearl Rd., she saw a "smashed-up" car had crashed through a fence and saw the driver (Desmond Franklin) covered in blood.  (*Id.* at 26.)  She noticed a young teenage male (Devin Badley) outside, next to the driver's side of the car, screaming.  (*Id*.)  She quickly ran back to her car to retrieve her police radio and noticed Officer Garcia walking north on W. 25th and yelling at the young male (Badley) "where's the gun? where's the gun?" (*Id.* at 27.)  She stayed with Badley as other first responders quickly arrived.

### 2. A blood-soaked gun is immediately recovered from the top of the unresponsive driver's feet.

Officer Todd Esson was the first on-duty CDP officer at Riverside Cemetery.  (Declaration of Todd Esson, ¶¶2-3, Ex. C.)  He observed that a maroon Ford had apparently crashed through the fence of the cemetery and Garcia and Lopez were standing next to a young male (Badley).  (*Id.* at ¶3.)  As he approached the driver's side of the Ford, Esson saw the driver (Franklin) unconscious and unresponsive, with significant blood loss.  (*Id.* at ¶4.)  A trained paramedic, Officer Esson

---

[1] A flash drive containing the 911 call audio attached to the Declaration of Brian McEntee, Ex. A-1, was filed manually with the Court. Doc. No. 42. The link to the audio is being provided for the Court's convenience.
[2]  "Lopez" is Cleveland Police Officer Dalia Lopez.

immediately felt for a pulse but found none.  (*Id.* at ¶¶1, 4.)  He observed a gun, covered in blood, lying on top of Franklin's feet.  *Id.*  He eventually retrieved the gun to allow the paramedics to pull Franklin out of the car and held on to the gun near the Ford until Cleveland Police Homicide Unit arrived to investigate.  (*Id.* at ¶¶5-6.)

### 3. A few minutes earlier, the driver threatens to shoot Garcia, chases him in his car, tries to cut him off and produces a gun as he continues to chase Garcia. Garcia shoots him in self-defense.

Around 1:35 p.m. that day, Officer Garcia left his home in the Old Brooklyn neighborhood of Cleveland, Ohio, to start his shift at the second district, located roughly 10-15 minutes from his house.  (Deposition of Jose Garcia, Feb. 22, 2023, pp. 49, 54, Ex. D.)  He was driving his silver manual transmission Honda Accord, dressed in civilian clothes, carrying a city-issued Glock-17 in his personal holster clipped to his pant waistband; and his police badge was concealed in his pocket or waistband.  (*Id.* at pp. 50-51, 56-57, 61, 67.)

He approached the stop sign at the intersection of Forestdale Ave. and Pearl Rd. intending to turn right onto Pearl Rd.  (Google maps printout, marked at p. 70 of Garcia depo., Ex. E.)  As he stopped at the intersection, Officer Garcia noticed a box truck in the parking lot of Convenient Food Mart ("Convenient") was partially blocking his left-side view of Pearl Rd. (Garcia depo., pp 72-74.)  At the same time, a maroon Ford Taurus pulled up behind the box truck and the passenger (Badley) jumped out of the Taurus and started stealing boxes of merchandise from the truck. (*Id.*., *see also* pp. 81-82.)  Officer Garcia rolled his window halfway down and told the driver of the Taurus (Franklin), "That's not nice, put it back." Franklin responded, "Shut the fuck up, you want your shit shot up?" (*Id.* at pp. 74, 81-82.)  Badley wasn't paying attention to either of them because he was "trying to smoke."  (Deposition of Devin Badley, Feb. 2, 2023, p. 75, Ex. F.)  He later testified that Garcia called Franklin "a p\*\*sy" and Franklin responded "Bruh, you a b\*\*ch." (*Id.*)

3

Garcia left and continued on his way to work.  He made a right turn (northbound) onto Pearl Rd., quickly looked back and, seeing the maroon Ford still stopped at Convenient, continued northbound on Pearl Rd., stopping at a red light at the next intersection of Pearl Rd. and Willowdale Ave. (Garcia depo., p. 96.)

Meanwhile, Franklin told Badley, "hand me the stick" (referring to a gun stashed under the carpet in the front passenger footwell).  (Badley depo., pp. 81-84.)  Badley handed Franklin the gun.  (*Id.*) Those were the last words they spoke.  (*Id.* at p. 85.)

A video timeline compiled from the neighborhood businesses shows Garcia's Honda stopped behind another car at Forestdale Ave. and Pearl Rd.  (*See* Declaration of David Loomis, Ex. G[3], Click here to view the timeline.)  Franklin's maroon Ford can be seen pulling halfway into the eastbound lane of Forestdale Ave. and pausing next to Garcia's Honda (facing in the opposite direction, with the driver's side closest to Garcia).  Garcia's Honda pulls forward and turns right (north) on Pearl Rd.  The maroon Ford cuts across Forestdale and illegally[4] cuts through Wendy's drive-through.  Rather than turning right into the immediate lane, the Ford pulls onto the far northbound lane on Pearl Rd. and quickly speeds up to Garcia's Honda stopped at a traffic light at Willowdale and Pearl.  It's obvious from the video Garcia is trying to get away, but the maroon Ford eventually catches up to him after the intersection.

As he was waiting for the light at Willowdale to turn green, Garcia noticed there was a car behind him, also waiting for the red light.  "All of a sudden," he saw in the sideview mirror that the maroon Ford from the Convenient parking lot appeared, "coming really fast" towards him on

---

[3] The video timeline, attached to the Declaration of David Loomis, Ex. G-3, was filed manually with the Court. Doc. No. 43. The link is provided for the Court's convenience.
[4] *See* Cleveland Codified Ordinances, §431.41 (shortcutting at intersections).

the outside lane, pulling up right next to him.  (Garcia depo., p. 100, 103.)  Jonathan Schubert, the

eyewitness driving directly behind Garcia's car on Pearl Rd. confirmed:

> I saw a maroon Ford Taurus come flying by to try to catch up with the silver Honda.
> I did not know this at the time, but I since learned that the maroon car was driven
> by Desmond Franklin.  It was like his car came out of nowhere.  It appeared to me
> that the maroon car was aggressively trying to catch the silver one.  It looked to me
> like he wanted to have a confrontation with the driver of the silver Honda.  The
> maroon car made an aggressive move slightly into the lane of the silver car as
> though it was trying to make him stop.  The maroon car in the other lane was very
> close to the silver car ahead of me at that point.
> (Declaration of Jonathan Schubert, ¶¶1-4, Ex. H.)

As soon as the light turned green, Garcia released the clutch (his car was already in first

gear) and sped up to get away from Franklin.  (Garcia depo., p. 101, 103.)  Having just heard

Franklin threaten, "you want your shit shot up," and then seeing Franklin aggressively speed up to

him, Garcia was scared, nervous and wanted to get away as quickly as possible.  (Garcia depo.,

pp. 101, 103.)

Franklin continued to chase Garcia.  (Video footage, *supra,* Garcia depo., pp. 142-143.).

What happened next took a matter of split seconds.  As Franklin continued to illegally chase Garcia

past the Willowdale light, he caught up to Garcia's Honda before Garcia had a chance to shift to

second gear.  (Video footage, Garcia depo., pp. 103, 158.)  Garcia looked to his left and saw the

barrel of a gun staring at him as both cars were moving forward parallel to each other.  (Garcia

depo., pp. 104, 108, 162.)  Garcia only saw the driver and did not realize there was a passenger in

the maroon Ford until after it crashed and Badley jumped out and ran.  (Garcia depo., pp. 106, 108,

138-140, 162.)  As soon as Garcia saw the gun inside the maroon Ford, he instantly reacted by

unholstering his weapon, angling it towards the driver of the Ford and discharging five rounds as

he was driving forward.  (Garcia depo., pp. 125, 130-131, 138-140.)  As soon as the volley ended,

Garcia stopped his car and dialed 911.  (*Id.*)  Franklin's car sped out of control and crashed through the fence at Riverside Cemetery.  (*Id.* at 141.)

The passenger Devin Badley testified that immediately before the shots rang out, he was looking straight ahead, not paying any attention to what was going on to his left or to his right and was not looking at Franklin.  (Badley Depo., pp. 94-95, 100, 105, 112-115.)  He insists he didn't see anything until the shots rang out and did not see Garcia after their interaction at Convenient until after the Ford crashed into the cemetery.  *Id.*  The only eyewitness who was looking directly at Franklin at the time the shots were fired was Garcia.  And Garcia saw the gun. As soon as the shooting stopped, Garcia reported to 911 he saw the gun.  (Garcia depo., p. 141, 911 audio, *supra*.)  As he was running up to Badley after the shooting, Garcia immediately demanded, "where is the gun, where is the gun."  (*See* 911 audio, Badley depo., p. 106, Garcia Depo., p. 172, Lopez Depo., p. 27.)  And the gun was recovered from the top of Franklin's feet.  (Essen dec., ¶4.)

### 4. Forensic evidence shows that the first round shattered the passenger-side window and struck Franklin in the right temple; Badley's jacket and the gun recovered from Franklin's feet were covered in pulverized glass from the shattered passenger-side window.

Forensic examination of the crime scene evidence and photographs concluded that, of the five rounds Officer Garcia discharged at Franklin's Ford, the first round was discharged when the cars were almost parallel to each other (consistent with Garcia's testimony).  (Declaration of Matthew Noedel, Jan. 16, 2024, CV and Report attached thereto, p. 14 of 17, Ex. I.)  The first round shattered the passenger-window glass and entered Franklin's right temple at a slight front to back angle.  (Noedel Report, *id*.)  Pulverized glass (tiny shards of glass) found on the gun and Badley's jacket resulted from a high-energy projectile, like a bullet, perforating tempered glass, like the glass of the passenger window of Franklin's Ford.  (Deposition of Matthew Noedel, Dec. 7, 2023, pp. 51-52, Ex. J.)  The pulverized glass found on Franklin's gun could only have come

from the shattered passenger-side window because the broken windshield glass is made from different material (laminated glass) that does not pulverize and because the car's impact with the fence generated significantly less energy than the bullet shattering the passenger window.  (*Id.* at 51-52.)

## D.    ARGUMENT

### 1.    Fed.R.Civ.P. 56(a) requires a *genuine* dispute of *material* fact in order to overcome a motion for summary judgment.

The Sixth Circuit Court of Appeals in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989) thoroughly analyzed the "new era" of summary judgment motions in light of the U.S. Supreme Court decisions in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The trial court has more discretion now than in the "old" summary judgment era in evaluating the respondent's evidence.  *Id.* at 1480.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* fn. 18, *quoting Matsushita* at 1356.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (emphasis added), *quoting Anderson*, 477 U.S. at 247-248.  And where the "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him," the court should not rely on such visible fiction. *Id.*  Internally inconsistent deposition testimony cannot, by itself, create a genuine dispute of material fact.  *Bush v. Compass Group USA, Inc.*, 683 Fed.Appx. 440 (6th Cir.2017).  Here, the record overwhelmingly supports the fact that Officer Garcia was threatened to be shot, chased in

his own vehicle, and threatened with a gun.  Under these circumstances, Officer Garcia must prevail on both Plaintiff's federal and state claims.

### 2. The Court has an independent duty to determine whether Garcia acted under the color of law.

In order to establish a *prima facie* §1983 claim, Plaintiff must show that Jose Garcia, (1) acting under the color of law, (2) deprived Desmond Franklin of his rights secured by the U.S. Constitution or its laws.  *See O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994).  A pivotal question is whether Garcia acted under the color of law or as a private citizen when he fired his gun at Franklin.  This legal issue must be determined by the court.  *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) (reversing the district court's acceptance of the parties' stipulation that the officer acted under the color of law without engaging in an independent review of the issue), *citing TI Federal Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995).

"The fact that a police officer is on or off duty or in or out of uniform is not controlling.  However, '[i]t is the nature of the act performed which determines whether the officer acted under the color of law."  *Mooneyhan v. Hawkins*, 129 F.3d 1264, Table, *3 (6th Cir.1997).  Off-duty officers act under the color of state law when they purport to exercise official authority.  *Id.* Such manifestations include "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations."  *Id, citing Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir.1980), *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975), *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995), *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir.1991).  On the other hand, an officer's purely private acts which are not furthered by any actual or purported state authority are not acts under the color of state law.  *Mooneyhan* at Table 4, *citing Delcambre v. Delcambre*,

635 F.2d 407, 408 (5th Cir.1981), *Hunte v. Darby Borough*, 897 F.Supp. 839, 841-42 (E.D.Pa.1995); *see also Redding v. St. Edward*, 241F.3d 530, 532-533 (6th Cir.2001).

Jose Garcia drove his personal vehicle to work, wearing civilian clothing. His city-issued gun was concealed in his personal holster, clipped to his waistband.  He did not identify himself as a police officer, flash his badge or attempt to arrest or issue a citation to Franklin or Badley before the shooting.  He did not direct orders or exert authority over Franklin or Badley prior to the shooting.  (Garcia depo., pp. 50-51, 56-57, 61, 67, 87-88, 92-93.)  Badley did not know Garcia was a police officer until after the shooting.  Apparently neither did Franklin.

On one hand, Garcia fired his city-issued weapon.  On the other, he had the right to defend himself under Ohio law, a right afforded to civilians.  R.C. 2901.05(B), R.C. 2901.09.  And, as the lawful occupant of his personal vehicle, Garcia had no duty to retreat, again, the right afforded to civilians in Ohio.  *See id.* and R.C. 2307.601.  *See e.g. Neuens v. City of Columbus,* 275 F.Supp.2d 894 (S.D. Ohio, 2003) (after the remand from the 6th Circuit, the district court found the officer did not act under the color of law).  When asked if Garcia suspected Franklin of a crime when he saw the gun pointed at him, Garcia testified that he had no time to think and reacted by defending himself.  (Garcia depo., pp. 130-131.)

Should this Court determine as a matter of law that Jose Garcia did not act under the color of law, the §1983 claim against him must be dismissed.

### 3. If the court finds Garcia acted under the color of law, he is entitled to qualified immunity because the use of force was objectively reasonable.

Plaintiff bears the burden of showing that Garcia is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir.2005).  Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful. *Chappell v. City of Cleveland*, 585 F.3d 901 (2009).

Because Officer Garcia used deadly force to defend himself, the legal principles in *Graham v. Connor* apply. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* at 388. This standard "requires careful attention to the facts and circumstances of each particular case, including 1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officer or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight," the so-called *Graham* factors. *Id.*

The officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The court must allow for the fact that "officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The Court must afford "a built-in measure of deference to [an] officer's on-the-spot judgment." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir.2002).

In this case, less than ninety seconds passed from Garcia's interaction with Franklin at Convenient to the time Franklin's Ford crashed into the cemetery fence, mere seconds from the time Franklin sped up to Garcia's Honda to the time he was shot and split seconds from the time Garcia saw Franklin produce the gun to the time Garcia fired his weapon.

> ### a. There is no genuine dispute over the fact that Officer Garcia saw Franklin produce a gun split seconds before he shot him.

Badley's testimony does not establish a genuine dispute of fact as to whether Garcia saw Franklin produce a gun split seconds before Garcia shot Franklin. Badley testified about what Franklin did with the gun immediately after Badley handed it to him. (Badley depo., pp. 112-113.) He admittedly "assumed" what Franklin must have done with the gun before the shooting. (Badley depo., pp. 114-115.) Badley did not and could not say where the gun was when Garcia saw it because Badley did not see anything to his left or to his right in the split seconds before the shooting. (Badley depo., pp. 94-95.)

No rational, reasonable juror could find that Garcia did not see Franklin holding the gun. The only fact established by Badley's testimony is that he, Badley, didn't see Franklin hold the gun immediately before Garcia shot him. It doesn't establish that Officer Garcia did not see it. The evidence in the record is overwhelming that Garcia saw Franklin produce a gun:

1. We know that Franklin had the gun because Badley admitted that he handed it to Franklin after Garcia left Convenient (Badley depo., p. 82);

2. The gun was recovered blood-soaked and covered in pulverized glass from the top of Franklin's feet after the shooting (Esson dec., ¶4, Noedel report);

3. Garcia testified he saw Franklin produce the gun as soon as he pulled up parallel to Garcia's Honda (Garcia depo., pp. 103-107);

4. Garcia immediately told 911 that he saw someone swung a gun at him (911 audio, *supra*);

5. Garcia demanded of Badley "where is the gun, where is the gun?" (911 audio, Lopez Depo., p. 27, Badley depo., pp. 105-106);

6. Badley testified that Garcia told him at the scene "you guys pointed a gun at me," and was yelling "where's the gun, where's the gun." (Badley depo., *id.*);

7. Badley admitted that he merely assumed he would have seen the gun if Franklin pointed it, but that he was looking straight ahead, was not paying attention to his surroundings, and was not looking at Franklin when shots rang out. (Badley depo., 94-95, 100, 115.)

An explained absence of evidence (i.e. the fact that Badley was not looking at Franklin and was not looking to his left or to his right) is not evidence of absence (that Franklin did not display the gun.) *See Presnall v. Huey*, 657 Fed.Appx. 508, 512 (6th Cir.2016), *see also Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir.2009).

In *Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir.2009), the Sixth Circuit Court of Appeals explained in detail what constitutes a *genuine* dispute of *material* fact and found that the district court "gave plaintiff the benefit of inferences and suppositions that are not only unsupported by the record facts, but are directly contradicted by the record facts." *Id.* at 911. The Sixth Circuit found that the district court reached conclusions not based on specific facts but on what it believed to be plausible. *Id.* at 913. Inferences drawn from a lack of conclusive evidence regarding the officer's state of mind, according to the Court in *Chappell*, is not enough to present a *genuine* dispute of material fact. *Id.*

The *Chappell* court also found the district court in error for finding a factual dispute as to whether the detectives announced themselves based on the fact that some other witnesses said they did not hear any police officer announce himself. *Id.* at 913-914. The court found that the witnesses' failure to hear the "police" announcement did not refute the detectives' testimony that they did. All it proved is that the witnesses didn't hear the announcement. *Id.* The court found that the dispute did not raise a *genuine* dispute of fact and the officers were entitled to qualified immunity.

Like in *Chappell*, Badley's testimony only explains why *Badley* didn't see the gun – he wasn't looking. It doesn't refute Officer Garcia's testimony or the overwhelming corroborating evidence that he saw Franklin produce a gun. If the court were to conclude that Badley's testimony creates a *genuine* dispute of material fact, it would be drawing an impermissible inference from

12

the absence of evidence (if Badley didn't see what he wasn't looking at, then Garcia could not have seen it either).

Finally, Badley's self-contradictory story does not tip the scale in favor of a genuine dispute of fact. *See e.g. Reigh v. Elizabethtown*, 945 F.3d 968, 980 (6th Cir.2019) (affirming summary judgment where no reasonable juror would credit the plaintiff's allegations); *Bush v. Compass Grp. USA, Inc.*, 683 F.Appx. 440, 449 (6th Cir.2017) ("although the non-moving party is entitled to all reasonable inferences when evaluating a summary judgment motion, when a plaintiff's claims are only supported by his 'own contradictory and incomplete testimony … no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint'"), *quoting Jeffreys v. City of New York*, 426 F.3d 549, 555 (2nd Cir.2005) (affirming summary judgment where nothing in the record supported plaintiff's own contradictory and incomplete testimony).

### b. *Garcia's use of force was objectively reasonable.*

First, for the reasons just stated, there is no competent evidence to dispute that, in the split seconds before Garcia defended himself, he saw Franklin point the gun at him.  If Franklin pointed the gun at Garcia, all parties must agree that Garcia's use of force was objectively reasonable. *Presnal v. Huey*, 657 Fed.Appx. 508, 512 (6th Cir.2016), *citing Boyd v. Baeppler*, 215 F.3d 594, 598, 604 (6th Cir.2000); *Estate of Sowards v. City of Trenton*, 125 Fed.Appx.31, 34, 38-39 (6th Cir.2005), *Whitlow v. City of Louisville*, 39 Fed.Appx. 297, 300, 306 (6th Cir.2002).

However, the gun doesn't have to be pointed at Garcia for him to perceive imminent danger. Officers do not have to wait for the business end of the gun to be pointed at them before using deadly force. *See e.g. Puskas v. Delaware County,* 56 F.4th 1088, 1096-1097 (6th Cir.2023), *citing Thornton v. City of Columbus*, 727 Fed.Appx. 829, 838 (6th Cir.2018), *Wilkerson v. City of Akron*,

13

906 F.3d 477, 482-83 (6th Cir.2018) (officers who shot a fleeing suspect could have reasonably believed that the suspect could turn and fire upon them.)  For purposes of this motion, therefore, the precise position of the gun is irrelevant as long as Garcia *saw* Franklin holding the gun in the split seconds before taking action based on his immediate experience with Franklin.  Franklin just told Garcia "shut the fuck up, you want your shit shot up," chased Garcia down the street after Garcia had left, cut into Garcia's lane and produced a gun as he was chasing Garcia.  From Garcia's perspective, in the seconds that this occurred, Franklin had no reason to chase him down the street or to have any further interaction with him unless Franklin meant to harm him.  Rather than go on his way, Franklin told Badley "hand me the stick," illegally cut through the Wendy's parking lot and operated his vehicle so aggressively that a completely independent witness, having had no prior interaction with either of them, immediately knew there was going to be trouble. (Schubert Dec., ¶5) ("[i]t immediately made me uncomfortable.  I slowed down because I thought there might be trouble.")

In *Mullins v. Cyranek*, 805 F.3d 760 (2015), the Sixth Circuit upheld summary judgment in favor of an officer who shot a suspect brandishing a firearm after the threat had already subsided.  In that case, the suspect brandished a gun and threw it over the officer's shoulder, in response to which the officer fired two shots fatally wounding the suspect.  Because the events unfolded in a matter of seconds, the officer had just faced danger, and he was forced to make a split-second decision, the Court found that he was entitled to qualified immunity:

> While hindsight reveals that Mullins was no longer a threat when he was shot, we do not think it is prudent to deny police officers qualified immunity in situations where they are faced with a threat of severe physical injury or death and must make split-second decisions, albeit ultimately mistaken decisions, about the amount of force necessary to subdue such a threat.  *Id.* at 768.

14

The Sixth Circuit in *Puskas v. Delaware County, Ohio*, *supra*, found that the officers' uses of deadly force against a suspect who brandished a weapon, under the totality of the circumstances, was reasonable when he had previously threatened to shoot his wife and failed to follow the officers' commands.  *Puskas* at 1096, *citing Thornton*, 727 Fed.Appx. at 837 (6th Cir.2018) (finding that deadly force was reasonable when the suspect held (not pointed) a shotgun after failing to comply with commands), *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 445 (6th Cir.2012) (deadly force found reasonable where suspect brandished a silver object, yelling "I have a gun" after threatening to kill others and fleeing from police), *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 404-405 (6th Cir.2007) (deadly force found reasonable when the suspect helped cause a standoff and exited his residence carrying a rifle); *see also, generally, Gambrel v. Knox Cty.,* 25 F.4th 391, 400 (6th Cir. 2022).

No reasonable juror would expect Garcia to wait and see what Franklin was going to do with the gun.  And Franklin's actions spoke louder than words.  Garcia remembered what Franklin had just said to him, saw the maroon Ford come out of nowhere and aggressively speed up to Garcia's car, cut into his lane and continue to chase him.  Any reasonable police officer would be justified in using deadly force as soon as Franklin produced a gun under these circumstances.

4.     **Independent from the Court's determination of the constitutional question, Garcia is entitled to qualified immunity because the alleged constitutional violation was not clearly established.**

"Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018), *citing Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011). The existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This standard protects "all but the

15

plainly incompetent who knowingly violate the law." *Id.*, *citing Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent, which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" *Id.*, *quoting Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) and *al-Kidd*, *supra.* The U.S. Supreme Court has repeatedly stated that "courts must not define clearly established law at a high level of generality." *Id.*

In excessive force cases, qualified immunity shields police officers "unless existing precedent 'squarely governs' the specific facts at issue.  *Kisela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018), *quoting Mullenix v. Luna*, 577 U.S. 7, 13, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015).  In excessive force cases, "specificity is especially important where the constitutional boundaries are intensely fact-dependent." *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir.2024), *citing Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6, 142 S.Ct. 4, 211 L.Ed.2d 164 (2021) (finding that the plaintiff has not met his burden of identifying a case that should have put the police officer on notice that specific conduct was unlawful.)

The inquiry in this case cannot be left at a level of generality this Circuit and the U.S. Supreme Court have repeatedly rejected.  Rather, the question is, are there reported cases in this Circuit with a fact pattern similar enough to put Officer Garcia's use of force against Franklin beyond debate? The audacity of Franklin's actions in this case, however, are truly unprecedented in this Circuit.  The undersigned have scoured cases for a similar fact pattern: where someone intentionally chases a police officer in a vehicle and threatens him with a gun.  Most police officers do not expect that they will be chased by suspects, let alone that the same suspect will then brandish a gun as they are chasing the officer.  In this case, Plaintiff might respond that Franklin didn't know

Garcia was an officer and, had he known, none of this would have happened.  As if Franklin's ignorance of Officer Garcia's badge somehow lessens the social expectation that people typically should not pursue others down the street and threaten them with a gun. Besides the absurdity of this suggestion, what Franklin knew or intended is irrelevant in this context.  It is what Officer Garcia perceived that culminated in the use of deadly force that matters.  *See e.g. Kelly v. Stanforth*, 647 Fed.Appx. 572, 576 (6ᵗʰ Cir.2016) ("[r]egardless of the plaintiff's 'subjective intent,' the crucial question was how a 'reason able officer in the heat of the moment' could have construed the plaintiff's behavior."), *see also Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6ᵗʰ Cir.2015), *Chappell*, 585 F.3d at 912.  Bottom line is, there is no other case like this and no clearly established law that Garcia's actions violated the U.S. Constitution.

5.    **Plaintiff's state-law claims for survivorship (Claim 2), negligence (Claim 3) and intentional infliction of emotional distress (Claim 4) are barred by the one-year statute of limitations.**

The first paragraph of Plaintiff's Complaint alleges that Officer Garcia "unjustifiably shot and killed" Desmond Franklin.  (Compl, ¶1, Doc. No. 1.)  At the crux of this case is the alleged intentional shooting of Desmond Franklin.  As such, in their very essence, Plaintiff's state law claims sound in assault and battery, not in negligence and not in intentional infliction of emotional distress.  Where the essential character of a tort is an intentional offensive touching (i.e. shooting someone with a firearm) the statute of limitations for assault and battery applies, even if the touching is plead as negligence. *See Kuhar v. Marc Glassman, Inc.*, 2009-Ohio-2379, ¶8 (8ᵗʰ Dist.), *citing Saleh v. Marc Glassman Inc.*, 2005-Ohio-6127 (8ᵗʰ Dist.), *Love v. Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166 (1988).  As the Eighth District Court of Appeals noted, "one cannot circumvent the statute of limitations for assault and battery through clever pleading or by utilizing another theory of law." *Id.* at ¶8.

17

The same rule of law applies to assault and battery claims that are framed as claims for intentional infliction of emotional distress. *See Stafford v. Columbus Bonding Ctr.*, 2008-Ohio-3948, ¶16 (10th Dist.) (affirming an award of attorneys' fees for frivolous conduct for continuing to pursue a claim for intentional infliction of emotional distress where the defendant intentionally pointed and held a rifle to appellant's head and neck and threatened appellant's life.) In finding that the attorney representing the appellant had no good-faith basis for bringing the emotional distress claim outside the one-year statute of limitations, the Court found the appellant was aware that the underlying character of the alleged intentional conduct was the actual offensive and threatened contact, subject to the one-year statute of limitations. *See also Deir v. Lake County*, Case No. 1:12-cv-110, 2014 WL 494570, *3 (N.D. Ohio, Feb. 6, 2014).

The Ohio statute of limitations for claims arising from assault and battery is one year. R.C. 2305.111. Desmond Franklin was shot on April 9, 2020. This action, however, was not brought until December 6, 2021 (Doc. No. 1), outside the one-year period. Because Plaintiff's survivorship, negligence and intentional infliction of emotional distress claims arise out of the alleged intentional shooting of Desmond Franklin, all three claims are barred by the one-year statute of limitations.

### 6. Plaintiff's survivorship claim fails because Franklin suffered no *conscious* pain and suffering.

Plaintiff's second claim for relief sounds in survivorship for the conscious pain and suffering Desmond Franklin had allegedly suffered after he was shot in the head. (Doc. No. 1, ¶¶29-32.) Under R.C. 2305.21, a survivorship action may be brought on behalf of a person notwithstanding his death. A decedent may not recover for pain and suffering when it is shown the decedent was rendered unconscious at the instant of the injury and died of such injuries without ever having regained consciousness. *Flory v. New York Cent. Rd. Co.*, 170 Ohio St. 185, 189, 163

18

N.E.2d 902 (Ohio 1959) *Laverick v. Children's Hosp. Med. Ctr. Of Akron, Inc.*, 43 Ohio App.3d 201, 540 N.E.2d 305 (9th Dist. 1988). Survivorship actions, unlike wrongful death claims, require a demonstration of conscious pain and suffering by a decedent prior to death. *Nationwide Mut. Ins. Co. v. Wright,* 9th Dist. Lorain No. 95CA006190, 1996 WL 304205

The evidence in the record shows that the first bullet Officer Garcia fired was the fatal bullet that arrived at Desmond Franklin's head. (Noedel report, pp. 4-5, 11.) Badley was next to Franklin immediately after Franklin was shot. Franklin never spoke after he was shot. Badley does not know if Franklin's eyes were open or closed or if he was breathing. (Badley Depo. pp. 106-108.) Officer Esson, the first officer on scene and trained paramedic, felt no pulse and observed that Franklin was unresponsive, unconscious and suffered significant blood loss. (Esson Dec., ¶¶3-4.)

EMS records show that upon arrival at the scene Franklin was not breathing, his pulse was "absent," his mental status was "unresponsive." (*See* EMS Report, p. 3, Ex. K.) *See e.g. Curtiss v. Charter Communications, Inc.*, No. 1:21-cv-543, 2023 WL 6258257, *8 (N.D. Ohio, Sept. 26, 2023) (granting summary judgment on the survivorship claim where the record showed no evidence that the plaintiff's decedent suffered conscious pain and suffering prior to his death.)

Plaintiff cannot reasonably dispute that Franklin experienced no conscious pain and suffering from the moment he received a single gunshot wound to his head. (*See* Death Certificate, Ex. L.) Plaintiff produced no expert report or other evidence to establish that Franklin was even capable of being conscious after receiving such a devastating wound. For this reason, his claim for survivorship, Claim 2, must fail in addition to being barred by the statute of limitations.

**7.    R.C. 2307.60(B) is a complete bar to Plaintiff's state-law claims because Franklin's commission of a felony was the direct and proximate cause of his injuries and death.**

Pursuant to R.C. 2307.60(b)(2)(b), recovery on a claim for relief in a tort action (which includes wrongful death claims) is barred to any person or the person's legal representative if the person engaged in conduct that, if prosecuted, would constitute a felony, a misdemeanor that is an offense of violence, an attempt to commit a felony, or an attempt to commit a misdemeanor that is an offense of violence and that conduct was a proximate cause of the injury or loss for which relief is claimed in the tort action, regardless of whether the person has been convicted of committing or attempting to commit such a crime.  Similarly, pursuant to R.C 2307.60(b)(3), "recovery against a victim of conduct that, if prosecuted, would constitute a felony, a misdemeanor that is an offense of violence, an attempt to commit a felony, or an attempt to commit a misdemeanor that is an offense of violence, on a claim for relief in a tort action is barred to any person or the person's legal representative if conduct the person engaged in against that victim was a proximate cause of the injury or loss for which relief a claimed in the tort action."  Again, a conviction is not required. *Id.*

Franklin committed multiple felonies, regardless of whether he pointed the gun, displayed the gun or merely possessed it.  Because there is no genuine dispute of material fact that Garcia fired his weapon *because* he *saw* the gun, all state causes of action are barred by R.C. 2307.60(B)(2)(b) and (3).

Pursuant to R.C. 2923.13(A)(1), no person shall knowingly acquire, have, carry or use any firearm if he is under indictment or has been convicted of any felony offense of violence.  Such conduct is a felony in the third degree.  R.C. 2923.13(B).  At the time he was shot, Franklin was under indictment for aggravated robbery, robbery and abduction.  (Certified copy of indictment, Case No. 648120-20-CR, Cuyahoga County Court of Common Pleas, Ex. M.) And Franklin had already been convicted of the offense of weapons under disability in 2015, for which he was

sentenced to 18 months in prison.  (Record of Conviction and Sentence, Case No. CR-15-599259, Ex. N, *see also* Indictment from same case, showing Franklin's prior adjudication as a delinquent juvenile for aggravated robbery, constituting the prior disability, Ex. O.)  Additionally, Franklin was committing the crimes of "improperly handling firearms in a motor vehicle, R.C. 2923.16(B) ("no person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle), carrying a concealed handgun without a license, R.C. 2923.111, aggravated menacing, R.C. 2903.21(A), and potentially other crimes.  For these reasons, Plaintiff's state law claims against Garcia are statutorily barred.

### 8.  For the same reasons that Plaintiff's claims under 42 U.S.C. §1983 fail, so do his state-law claims fail pursuant to Ohio Political Subdivision Tort Immunity, R.C. Chapter 2477.

If the Court finds that Garcia's use of force was objectively reasonable, it must also find in his favor on the state-law claims.  Under R.C. 2744.03(A)(6)(b), employees of political subdivisions are immune from injuries arising from performing governmental or proprietary functions unless they acted with "malicious purpose, in bad faith, or in a wanton or reckless matter."  The court's finding that the use of force was objectively reasonable necessarily precludes a finding of malicious purpose, bad faith or wanton or reckless conduct that would strip the employee of immunity from state-law claims.  *Mullins v. Cyranek,* 805 F.3d at 769, *Chappell,* 585 F.3d at 916 n .3.

### 9.  Plaintiff's state-law claims fail because Garcia was entitled to use deadly force in self-defense.

Garcia acted in self-defense when he shot Desmond Franklin.  Ohio law allows a person to act in self-defense.  R.C. 2901.05(B)(1).  A person in a tort action related to the person's use of

force alleged to be in self-defense has no duty to retreat before using force in self-defense if that person is in a place in which the person lawfully has a right to be. R.C. 2307.601(B).

The legal landscape of self-defense law and its elements has shifted significantly with recent legislative enactments. *e.g.* R.C. 2307.601 (stand your ground statute). The 2008 version of this statute reads as follows:

> For purposes of determining the potential lability of a person in a tort action related to the person's use of force alleged to be in self-defense … if the person lawfully is an occupant of that person's vehicle or lawfully is an occupant of a vehicle owned by an immediate family member of the person, the person has no duty to retreat before using force in self-defense. 2008 Ohio Laws File 92(Sub. S.B. 184).

The statute was later amended to its current version, removing the duty to retreat from any place in which the person is lawfully present, and adding subsection (C) that the trier of fact shall not consider the possibility of a retreat as a factor in determining whether or not a person who used force in self-defense reasonably believed that the force was necessary to prevent injury, loss or risk to life or safety. The Ohio Jury Instructions Commission believes this subsection applies to any jury trial held on or after the effective date of the statute, April 6, 2021. Ohio Jury Instructions, Comment to Chapter CV 303, Standards of Proof, Self-defense, Defense of Another, Defense of Residence in Tort Actions (Rev. 3/12/22).

In order to find the defendant acted in self-defense, he must prove by the greater weight of the evidence that (A) he was not at fault in creating a situation giving rise to the use of force, and (B) he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in immediate danger of bodily harm and that his only means of escape from such danger was in the use of such force, and (C) that he did not violate any duty to retreat or avoid the danger. *Id.*

Jose Garcia had the right to be in his vehicle. Therefore, he had no duty to retreat and had the right to defend himself against Franklin. Should the Court find that Garcia's use of force was

22

objectively reasonable, then, necessarily the conclusion must be the same under state self-defense law.

Further, Garcia's job as a police officer does not strip him of his rights as a citizen.  And, if so, his actions must necessarily be judged from the view of an ordinary citizen, not a trained police officer.  Would a reasonable person believe that his use of deadly force was justified when he was just threatened by Franklin, tried to get away from him unsuccessfully, was chased down in his car and saw Franklin produce a gun as he was chasing him?  And if police officers are not expected to wait for the "business end" of a gun to be pointed in their direction, neither are private citizens.

**10.      Plaintiff is not entitled to punitive damages.**

Punitive damages are not available in wrongful death actions in Ohio.  *Charter Communications, supra* at *8; *see also LaMusga v. Summit Sq. Rehab, LLC,* 2015-Ohio-5305, ¶32 (2nd Dist.), *Beavers v. Knapp*, 2008-Ohio-2023 (10th Dist.).  Therefore, in order to be awarded punitive damages, Plaintiff must show that he is entitled to damages under his survivorship action, which he is unable to do because there is no evidence that Desmond Franklin suffered any conscious pain and suffering after he was shot in the head, and because his survivorship action is barred by the one-year statute of limitations.  *See e.g. Rubeck v. Huffman*, 54 Ohio St.2d 20, 23-24, 374 N.E.2d 411 (1978)*, supra* at 23, *see also Whetstone v. Binner*, 146 Ohio St.3d 395, 2016-Ohio-1006, 57 N.E.3d 1111.  Therefore, if the wrongful death action is the only remaining claim surviving this summary judgment motion, Plaintiff is not entitled to punitive damages against Jose Garcia.

**E.      CONCLUSION**

For the reasons stated above, Defendant Jose Garcia is entitled to a judgment in his favor as a matter of law.

Respectfully submitted,

MARK D. GRIFFIN (0064141)
Director of Law

By:   */s/ Elena N. Boop*
Elena N. Boop (0072907)
Chief Trial Counsel
James R. Russell, Jr. (0075499)
Chief Assistant Director of Law
Affan Ali (0085698)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: EBoop@clevelandohio.gov
JRussell2@clevelandohio.gov
Aali2@clevelandohio.gov


*/s/ Thomas J. Cabral*
Thomas J. Cabral (0033041)
1215 Superior Avenue, 7th Floor
Cleveland, OH 44114
Tel: (216) 522-1172
Email:  tcabral@gallaghersharp.com
Gallagher Sharp, LLP

*Attorneys for Defendant Jose Garcia*

24

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically on the 31st day of January, 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Elena N. Boop*
One of the Attorneys for Jose Garcia

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATIONS

I hereby certify that Defendant Jose Garcia's Motion for Summary Judgment and Memorandum in Support is 24 pages, excluding certifications, tables of contents and table of authorities, and complies with the limitations set forth in Loc. R. 7.1(f) and the additional five pages permitted by leave of court. *See* Order, Related Doc. No. 30, granting Defendant's Motion to Exceed Page Limit, dated 01/29/2024.

*/s/ Elena N. Boop*
One of the Attorneys for Jose Garcia

25