IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF DESMOND FRANKLIN,** | Case No. 1:22-cv-61 |
| Plaintiff, | Judge Dan Aaron Polster |
| v. | |
| **CLEVELAND POLICE OFFICER JOSE GARCIA,** | |
| Defendant. | |

**Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment**

Plaintiff, on behalf of Desmond Franklin and his heirs and beneficiaries, opposes Officer Garcia's Motion for Summary Judgment and asks the Court to deny that Motion and set the case for trial. Plaintiff's brief in support of Opposition follows, preceded by a table of contents, table of authorities, and a statement of the issues. Certifications of service and compliance with the local rules, along with an exhibit list, are appended to the brief. Video exhibit access links are provided in the exhibit list.

Respectfully submitted,

*s/ Elizabeth Bonham*
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
Terry Gilbert (0021948)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square Ste 1900
Cleveland Ohio 44113
T: 216-241-1430
sarah@FGGfirm.com
elizabeth@FGGfirm.com
terry@FGGfirm.com

*Counsel for Plaintiff*

# Table of Contents

**Contents**

I.   Statement of the Disputed Material Facts ........................................................................ 1

    A.   The key facts of when Officer Garcia killed Desmond Franklin are in dispute between the interested-party shooter and the independent eyewitness. ...................................... 1

    B.   Contextualizing the central fact dispute, the full case facts are as follows. ..................... 2

    C.   Defendant's preferred version of the facts is objectionable and irrelevant. ..................... 7

II.  Standard of Review ......................................................................................................... 8

III. Law & Argument ............................................................................................................. 9

    A.   Officer Garcia was acting under color of law when he killed Desmond Franklin and Garcia does not really argue otherwise. ......................................................................... 9

    B.   Officer Garcia is not entitled to qualified immunity for killing Desmond Franklin. ........ 10

        i.   Qualified immunity is not available when the facts are in dispute. ............................ 10

        ii.  Officer Garcia's shooting of Desmond Franklin was objectively unreasonable under *Graham v. Connor.* ................................................................................................. 11

        iii. Officer Garcia violated clearly established law when he shot Desmond to death unreasonably; more specifically, a reasonable officer would understand the impropriety of shooting the non-threatening driver of a moving car past the face of his 17-year-old passenger while the officer's car is also moving and the officer is not looking at his target such that the driver dies and his car with his passenger speeds down a busy road in the middle of the day and crashes into a public cemetery. ......................................................... 13

    C.   Officer Garcia's other affirmative defenses fail and he is not entitled to summary judgment. ......................................................................................................................... 14

        i.   The statute of limitations does not bar any of the claims here...................................... 15

        ii.  A jury must decide whether to award Desmond Franklin's estate survivorship damages for his pain and suffering. .............................................................................................. 17

        iii. Ohio's state civil liability for criminal acts statute is not an applicable affirmative defense here, according to its plain language, which Defendant ignores. ..................... 18

        iv.  Ohio's state law tort immunity statute is not an applicable affirmative defense here, and Defendant waived his argument otherwise. ................................................................... 19

        v.   Ohio's self-defense and castle-doctrine defenses are not applicable at this stage because of the factual disputes discussed above. ................................................................... 19

        vi.  Ohio's punitive damages rules are not applicable at this stage because his claims survive and punitives belong on a jury questionnaire......................................................... 20

IV.  Conclusion ..................................................................................................................... 20

## Table of Authorities

**Cases**

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) ............................................................ 8, 9

*Blue v. Coca–Cola Enterprises, Inc.*, 43 F. App'x 813 (6th Cir. 2002) ....................................... 9

*Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir. 1989) ............................................................ 10

*Brosseau v. Haugen*, 543 U.S. 194(2004) ............................................................................ 13, 14

*Butcher v. Bryson*, M.D. Tenn. No. 3:12-251, 2014 WL 4385904 (Sept. 5, 2014)..................... 17

*Campbell v. Cheatham Cty. Sheriff's Dep't.*, 47 F.4th 468 (6th Cir. 2022) ............................... 13

*Coleman v. Cardinal Health 200, LLC,* E.D. Mich. No. 12-11154, 2013 WL 4042284 (June 20, 2013) ....................................................................................................................................... 7

*Cunning v. Windsor House, Inc.*, 2023-Ohio-352 (Ohio Ct. App. 2023) ................................... 15

*David v. City of Bellevue*, 706 F. App'x 847 (6th Cir. 2017)..................................................... 13

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................ 11

*Hidey v. Ohio St. Highway Patrol*, 689 N.E.2d 89 (Ohio Ct. App. 1996)................................... 16

*Hood v. City of Columbus, Ohio*, 827 F. App'x 464 (6th Cir. 2020)............................................ 1

*Hood v. City of Columbus,* S.D. Ohio No. 2:17-cv-471, 2021 WL 2313469 (June 7, 2021) . 14, 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...................................................................................... 13

*Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019) ........................................................................ 13

*Kalvitz v. City of Cleveland*, 763 F. App'x 490 (6th Cir. 2019) ................................................. 9

*King v. City of Columbus,* S.D. Ohio No. 2:18-cv-1060, 2021 WL 3367505 (Aug. 3, 2021)....... 18

*Laverick v. Children's Hosp. Med. Ctr. Of Akron, Inc.,* 540 N.E.2d 305 (Ohio Ct. App. 1988.) 17

*Love v. City of Port Clinton,* 524 N.E.2d 166 (Ohio 1988) ....................................................... 16

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir.1997)........................................................... 9, 15, 19

*Monnin v. Fifth Third Bank of Miami Valley, NA,* 658 N.E.2d 1140 (Ohio Ct. App. 1993)........ 15

*Palma v. Johns* 27 F.4th 419 (6th Cir. 2022).......................................................................... 13

*Redrick v. City of Akron,* Sixth Cir. No. 21-3027, 2021 WL 5298538 (Nov. 15, 2021) ........ 12, 13

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................................................... 11

*Sherrod v. Williams,* S.D. Ohio No. 3:14-cv-454, 2019 WL 267175 (Jan. 15, 2019)................. 10

*Smith v. Jones,* N.D. Ohio No. 1:13-cv-744, 2016 WL 455617 (Feb. 5, 2016) ........................... 17

*Snyder v. Kohl's Dep't Stores Inc.,* 580 F. App'x 458 (6th Cir. 2014) ...................................... 15

*Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998)...................................................... 10

*Stewart v. City of Euclid,* 970 F.3d 667 (6th Cir. 2020) .......................................................... 19

*Tennessee v. Garner*, 471 U.S. 1 (1985) ........................................................................... 11, 14

*Tichon v. Wright Tool & Forge,* 2012-Ohio-3147 (Ohio Ct. App. 2012) ................................... 17

*Whetstone v. Binner,* 2016-Ohio-1006 (Ohio 2016)................................................................. 20

*Yatsko v. Graziolli,* 458 F. Supp. 702, 713 (N.D. Ohio 2020).................................................... 9

*Yatsko v. Graziolli,* Sixth Cir. No. 20-3754, 2021 WL 5772527 (Dec. 6, 2021)......................... 11

**Statutes**

42 U.S.C. §1983............................................................................................................... *passim*

Ohio Rev. Code §2305.10(A) .................................................................................................. 16

Ohio Revised Code § 2305.21……………………………………………………………………...15

Ohio Rev. Code §2307.60(B)(2)............................................................................................... 18

Ohio Rev. Code §2744.03(A)(6)(b)...................................................................................... 16, 19

**Rules**

Federal Rule of Civil Procedure 26 ............................................................................... 7

Federal Rule of Civil Procedure 37(c)(1)…………………………………………………7

Federal Rule of Civil Procedure 56. ................................................................... *passim*

Federal Rule of Evidence 701 ........................................................................................ 7

Federal Rule of Evidence 403 …………………………………………………………..7

**Statement of the Case and of the Issues**

Plaintiff filed this civil rights damages action under 42 U.S.C. §1983 and state law after Defendant, off-duty Cleveland police officer Jose Garcia, recklessly and unreasonably shot Desmond Franklin to death.

The issue before the Court is whether Defendant is entitled to summary judgment on Plaintiff's claims. Because the claims turn on genuine issues of material fact, Defendant is not entitled to summary judgment.

**Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment**

The Court should deny Defendant's Motion for Summary Judgment because Rule 56 requires that a jury decide this case. This is a qualified immunity lawsuit. Every basis for Defendant's Motion turns on disputed facts. This Court has already read the deposition transcripts of the Defendant and the only independent eyewitness and concluded there is a genuine dispute of material fact. The Court should deny Defendant's Motion and set the case for trial.

## I.    Statement of the Disputed Material Facts

### A.  The key facts of when Officer Garcia killed Desmond Franklin are in dispute between the interested-party shooter and the independent eyewitness.

Desmond Franklin's family filed this civil rights case after off-duty Cleveland police officer Jose Garcia shot Desmond to death from his moving car. For purposes of Plaintiff's §1983 claim, the critical facts occurred at the moment of that shooting. *Hood v. City of Columbus, Ohio,* 827 F. App'x 464, 470 (6th Cir. 2020). Those facts are in dispute between Garcia and the eyewitness-passenger of Desmond's car, Devin Badley. Garcia testified that at the moment he shot Desmond, Desmond was pointing the barrel of a gun at Garcia. Devin testified that at the moment Garcia shot Desmond, Desmond was not pointing or even holding a firearm. No other eyewitness saw inside Desmond's car. No video or photo shows Desmond at the moment of the shooting. No scientific or other expert evidence reveals what happened for certain. It is undisputed that Desmond never *shot* his gun. As to what else happened, only a jury can test the facts and decide.

The disputed testimony from the only two people alive to supply it is:

<u>**Testimony of Devin Badley:**</u>

A: … And I looked up to my left and his head was just down, hands on the steering wheel, blood was just shooting all on me, like squirting and it was just all on me.
Q: You're saying his hands were on or off the steering wheel at that point?
A: I'm saying it was on the steering wheel….
A: I was looking, bruh, my head was like this.
Q: Okay, but I mean even before that, you didn't … [] see if he did anything with the gun?

A: The gun was right there. We was both looking straight, like straight ahead.

(Deposition of Devin Badley, ECF No. 44-6, PAGEID#368 at 99:10-100:14.)
---
Q: …You saw the gun was under Desmond's thigh; right?
A: Yes, ma'am.
Q: Did he ever pick it up from under his thigh?
A: No, ma'am.
Q: Did he ever reach for it or pick it up at all while you were in the car that day?
A: No, ma'am.
Q: So he didn't point the gun at Garcia in the car with you, right?
A: No, ma'am.

(*Id*. 112:20-113:5.)

**Testimony of Jose Garcia:**

Q: What did you see the driver doing exactly at that moment?
A: Pointing a gun towards my direction.
Q: Was he pointing it with his right hand or his left hand?
A: I can't recall exactly what hand he was using, but I just saw the barrel of the gun pointed towards my direction.
Q: Were any of his hands on the steering wheel?
A: It happened so fast. I just saw – focused on the barrel of the gun pointed towards my direction.
Q: Where in his car did you see the gun?
A: In the front side, like towards my direction.
Q: Did you see his arm pointing at you?
A: Like I said, I just focused on that barrel of the gun, and that's what I saw … that's what I can remember.

(Deposition of Jose Garcia, ECF No. 44-4, PAGEID#368, 106:25-107:18.)

**B.  Contextualizing the central fact dispute, the full case facts are as follows.**

23-year-old Desmond Franklin was "a father, a husband, a son, and a loving man." (Badley

Dep. 44:5-9.) On April 9, 2020, Desmond Franklin woke up, donated blood, then came home to

his family. (*Id.* at 58:8-20.) That afternoon he went back out to run some errands, including picking

up some chips for his young son and McDonalds for his partner Destiny. (*Id.*) Destiny's 17-year-

old brother Devin, for whom Desmond was "like a father figure," went along with him in the

passenger seat. (*Id.* at 42:24-43:5.) They drove Destiny and Desmond's Ford. (*Id.* at 61:20-62:11.)

Desmond and Devin were heading north on Pearl Road when they noticed a delivery truck was left open in the parking lot of a corner store. Desmond dared Devin to hop out of their car and take two packs of Peach Faygo off the back of the truck. (*Id.* at 67:17-69:19.) Devin "wasn't thinking that stealing soda would lead [to] somebody getting shot in the head." He hopped out of the passenger seat, grabbed the pop, put it in the car, and closed the door. (*Id.* at 73:15-74:21.)

Off-duty Cleveland police officer Jose Garcia, carrying his City-issued gun but in his own clothes and in his own Honda, was passing the corner store on his way to the police station. He saw the pop theft and engaged Desmond and Devin as misdemeanant suspects. (Garcia Dep. 82:6-14.) Garcia rolled his driver's side window down, and when Desmond "realized that" Garcia "was looking at him," Desmond rolled his window down too. (Badley Dep. 75:6-80:25.) Garcia, having started the encounter, spoke first. He said to Desmond, "you a pussy." Desmond responded back to Garcia, "you a bitch." (*Id.*) Without doing anything more than making an investigatory stop and hurling an insult, Garcia left and continued to the police station for work.[1] Desmond and Devin did not see where he had gone or know where he was going. (Badley Dep. 85:1-8.) The two did not know Garcia was a police officer. Garcia "could have said something like, 'Hey, I'm a Cleveland police officer. You put that back,' called backup, and went from there. That's how like the situation could have went, but it didn't." (*Id.*)

After their childish pit-stop to steal Peach Faygo had become unexpectedly frightening, Desmond rolled his own car windows up and he and Devin left. The boys were scared after the

---

[1] After an investigation by the City's Office of Professional Standards, Cleveland's Civilian Police Review Board found that Garcia's failure to identify himself as an officer when becoming involved in suspected criminal activity violated department policy and disciplined him. *See* Cleveland.com Dec. 13, 2022, "Off-duty Cleveland police officer improperly engaged man he later shot and killed, review board says," *available at* https://shorturl.at/ctEL7. Garcia testified that by engaging the young men, he was trying to get Devin to stop taking the pop, *see supra*; Garcia's counsel from the administrative proceeding said Garcia "left after he realized it was a misdemeanor." *Id.*

ununiformed stranger had approached and threatened them. Desmond asked Devin to hand him the firearm that Desmond kept in the car for protection. (Badley Dep. at 81:17-25.) Until then, the firearm was stored under the passenger's side footwell carpet. (*Id.* at 84:9-85:17.) Devin uncovered it and handed it to Desmond. (*Id.*) They got the firearm out because Devin "was in fear for my life" and Desmond "must have been in fear for his" after Garcia's troubling behavior. (*Id.* at 85:13-23; 86:1-2, "this random man just said something to us for no reason.") After Devin handed Desmond his firearm, Desmond set it on his own seat, partially under his right leg. (*Id.* at 90:2-16.) Desmond never moved the gun from that position. (*Id.*)

When Desmond and Devin left the Convenient store, they turned away from where Garcia had gone and cut through a Wendy's to proceed in the same direction and by the same route as they had been going before, north on Pearl. (Def.'s Manually Filed Exh. G-1, video compilation.) They drove in the inside lane. Their car windows stayed closed. A few seconds later, they came to a traffic light. They did not know that Garcia was going the same way and was stopped in the curb lane at the light they were approaching. (Badley Dep. 91:25-92:15.) To them, Garcia's car model and color was not unusual. (*Id.* 75:23-76:6.) They never realized Garcia was there.

Garcia, whose driver-side window was still rolled down, saw Desmond's car coming to pass him on the left, and recognized the car from when he had engaged Desmond a few minutes earlier. Garcia stuck his right arm across his own chest, pointed it straight out of his own window, and without looking where he was shooting, fired five shots at Desmond and Devin. (Garcia Dep. 136:2-140:13.) The first bullet smashed Devin's closed passenger side window, grazed Devin's face, and struck Desmond in the right temple, ultimately killing him. (Deposition of Defense Expert Matthew Noedel, ECF No. 44-10, PAGEID# 813, at 72:18-73:17; Pl.'s Exh. 2, Report of David Balish; Pl.'s Exh. 3, Deposition of Plaintiff's Expert David Balash at 71:1-72:6.) The rest

of the bullets hit Desmond's car as it continued forward, and one shattered Garcia's own side-view mirror on the way out. (Noedel Dep. at 58:5-22; Balash Dep. at 71:1.) After Desmond lost control of his body from a bullet to his temple, his firearm which was still under his thigh fell to the floor in the driver's side footwell. (Balash Dep. 78:10-79:11.) When Desmond's 249-pound dead weight collapsed onto the gas pedal, the car accelerated out of control with 17-year-old Devin still inside, sped down Pearl, and crashed into the Riverside Cemetery gate. (*See* Pl.'s Exh. 1, autopsy report.)

Devin did not even have time to look over and see Garcia before he heard the shots and the smashing window glass, instinctively ducked, and felt Desmond's blood pouring all over them both. (Badley Dep. 95:6-100:14.) He did see that at the moment Garcia shot Desmond, Desmond was not pointing a gun. (*Id*. 112:20-113:5.) Desmond's self-protective firearm remained under his leg. (*Id.*) Desmond's two hands were on the wheel. (*Id.* 113:6-21.) Desmond was looking ahead at the road, and the bullet went directly into his temple. (*Id.,* Pl.'s Exh. 1; Balash Dep. 78:10-23.)

After the car crashed, Devin tried to save Desmond's life. He tried to call for help but their phone was too covered in blood for the screen to work. (*Id.* at 101:2-102:21.) He tried to get help to keep Desmond alive at a nearby tire shop and bystanders told him not to try and move Desmond, and to press something against his wound. He ran back to the car and pressed his shirt into Desmond's head wound. After minutes of attempted aid, Desmond "tried to give [Devin] like a – he gave me like his last movement... he tried to shake it...as I was like giving him the...the aid, he just gave me his last, like his last like shoulder move." (Badley Dep. 107:9-23.)

Officer Garcia then drove onto the scene, forced Devin away from Desmond's side, and detained him at gunpoint. (Badley Dep. 103:18-104:23; Garcia Dep. 141:15-142:17; Def.'s Manually Filed Exh. A-1, 911 call.) Garcia gave Devin orders "as a police officer." On or off duty,

Garcia believed "I'm a police officer 24/7." (Garcia Dep. 172:3-175:20.) Garcia controlled the scene until uniformed officers arrived. (*Id.* 179:11-25.)

When EMS finally arrived, Desmond had no pulse. His firearm lay at his own feet. (Garcia Dep. 172:3-12.) The blood drop pattern on that firearm suggests that he was not holding it at the moment he was shot, when the blood and brain matter began flowing from his head. (Balash Dep. 81:9-82:14.) The location of the gun on the driver's side footwell, rather than nearer to the passenger's side of the car, also suggests Desmond was not holding or extending the firearm toward the passenger window at the time he was shot and lost control of his muscles. (*Id.*) Otherwise, the gun would have fallen onto that side of the car. The medical examiner later found that the bullet that killed Desmond entered his right temple almost straight-on, indicating that at the time Desmond was shot, he was looking ahead at the road, not towards Garcia. (Pl.'s Exh. 1; Noedel Dep. 64:11-65:7; Balash Dep. 78:10-23.) At least 5 minutes passed between the shooting and when Devin felt Desmond try to move and then die. (*See* Def.'s Manual Exh. A-1.)

From Garcia's perspective, when he shot Desmond after stopping him at the corner store, Desmond was a "suspect." (Garcia Dep. 125:17-23.) When Garcia shot Desmond, their cars were approximately parallel and both moving from the traffic light; Garcia was looking out his own windshield, shooting with his right hand stretched to the left across his own body out of his own driver's side window; and he was not looking at Desmond's car, its driver, or its passenger. (*Id.* at 136:2-140:13.) Garcia remembers no details except for seeing Desmond's car from his side-view mirror, then seeing the "barrel of a gun" once the cars were parallel, with Desmond's arm extended straight towards him. (*Id.* 121:3-24.) When, as Garcia testified, he saw the gun, he did not try to stop, or duck, or accelerate, or get away, or do anything besides shoot his weapon. (*Id.* 154:1-159:13.) A state-created video compilation shows the cars and Garcia pointing his gun but does

not show Desmond pointing his. (Def.'s Manual Exh. G-1.) After the shooting, Garcia pulled his own car over and called 911 to report an officer was under fire, telling dispatch he had been shot at. (Def.'s Manual Exh. A-1.) He followed Devin from a distance as Devin ran around trying to get help, including following him to the tire shop, to track potential "evidence" rather than rendering aid before Desmond died. (Garcia Dep. 160:8-166:16; Def.'s Manual Exh. G-1 at 1:20.)

### C. Defendant's preferred version of the facts is objectionable and irrelevant.

To the extent Defendant emphasizes different facts than those Plaintiff sets forth above, they do not change the disputed material facts viewed in the light most favorable to Plaintiff, and they are also based upon inadmissible evidence. Fed. R. Civ. P. 56(a) and (c)(1) and (2). First, Defendant relies heavily upon a September 2023 affidavit from a Jonathan Schubert, a man in a nearby car, who avers that he thought Desmond's car was "trying to catch up" with Garcia and "ma[king] an aggressive move" towards Garcia's car just before the shooting. (Def.'s Mot. 5.) Defendant offers this as the only support for his theory that Desmond was "chasing" him. (*Id.* at 4, 5) This testimony conflicts with all video depicting the two cars, as well as with Garcia's and Devin's accounts of how the cars were moving. (Def.'s Manual Exh. G-1.) Further, the affidavit is inadmissible under Federal Rules of Evidence 701 and 403.[2] This person's speculation that Desmond was "trying to catch" Garcia's car, which imputes motive to Desmond, is at best a competing opinion of what happened from someone unqualified to render one. In Mr. Schubert's interview with police after the shooting, he also supplied opinions that Garcia was involved in a

---

[2] This affidavit is also inadmissible because of its late disclosure. Though it is dated September 2023 and Defendant uses it in support of his affirmative defenses, he did not supplementally disclose it until his brief was due five months later. This requires its exclusion under Federal Rules of Civil Procedure 37(c)(1), 26(a), and 26(e). *See, e.g., See Coleman v. Cardinal Health 200, LLC,* E.D. Mich. No. 12-11154 2013 WL 4042284, at *2 (June 20, 2013) *affirmed* 2013 WL 3990676, at *2 (Aug. 2, 2013) (excluding use of late-disclosed evidence.)

"Hispanic / Hispanic" "gang" conflict, and that Garcia, Devin, Desmond, and all the bystanders at the tire shop "all knew each other" and were about to get into a "shootout" "because of the neighborhood" (although he did not want to "seem racist.") (Pl.'s Exh. 4, interview of Schubert, at 6:30-50, 13:17, 15:07.) Schubert did not see inside Desmond's car, nor did anybody else. (*Id.* at 14:22-40.) The jury should watch the video. Drawing inferences from it is the jury's province.

None of Defendant's other fact-selection changes the disputed material facts here either. For example, Garcia disputes what was said at the corner store: he testified that he told Desmond, "that's not nice, put [the pop] back," and that Desmond threatened to shoot him. (Def.'s Mot. 3.) However, in addition to Devin's differing testimony, Garcia also testified that "didn't think [Desmond] was armed" at the Convenient store and that he "thought [the interaction] was done" after he left the store. (Garcia Dep. 94:11-18, 99:15-100:2.) As another example, Garcia consistently testified that after the interaction at the Convenient store, and at the moment he shot Desmond, Garcia's driver's side car window was rolled partially up. (*Id.* 104:4-24.) Both parties' ballistics and reconstruction experts agree, however, that Garcia's window was completely lowered, and an eyewitness saw Garcia's gun arm sticking completely out of the car seconds after the shooting. (Noedel Dep. 87:6-88:18; Balash Dep. 61:15-62:17, Pl.'s Exh. 5, 911 call of witness Joe Becka at 2:00, 4:15.) These and other inconsistencies and any inferences suggested therefrom may help either party argue their theory of the case to a jury. However, these more minor disputes do not change what matters at summary judgment: there is a genuine dispute of material fact.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, a defendant moving for summary judgment carries the burden of proving that, drawing all inferences in plaintiff's favor, there is no genuine dispute of material fact and defendant is entitled to judgment as a matter of law. *Anderson v.*

*Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id*. at 255.

### III.    Law & Argument

#### A. Officer Garcia was acting under color of law when he killed Desmond Franklin and Garcia does not really argue otherwise.

Officer Garcia was acting under color of law within the meaning of §1983 when he killed Desmond Franklin. As a threshold matter, Defendant does not contend that he was *not* acting under color of law, nor does he ask the Court to so find. (Def.'s Mot. 8-9.) Instead, he merely sets forth the legal test for evaluating color of law and asserts that the Court has an "independent duty" to answer this question. Defendant has the burden of proving he is entitled to summary judgment. *Anderson,* 477 U.S. at 251. Where he does not raise arguments in support of his motion, he waives them. *See, e.g., McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997)*; Blue v. Coca–Cola Enterprises, Inc.,* 43 F. App'x 813, 816 (6th Cir. 2002). By failing to argue that he was not acting under color of law, Defendant waived this position and it is not a basis for the Court to grant summary judgment on Plaintiff's §1983 claims. Instead, this remains a jury question.

Even if the Court considers color of law, Garcia was acting under color of law here. A police officer (whether on or off-duty) acts under color of law when he exercises official authority. *Kalvitz v. City of Cleveland,* 763 F. App'x 490, 496 (6th Cir. 2019). Indicia of official authority include "identif[ying] himself as an officer, or arrest[ing] (or threaten[ing] to arrest) someone" or otherwise appearing to act like a police officer. *Id.* The key consideration is whether the officer himself "intend[ed] to…exercise official responsibilities pursuant to state law." *Id., see also Yatsko v. Graziolli,* 458 F. Supp. 702, 713 (N.D. Ohio 2020) (Polster, J.) (fact question as to whether off-duty Cleveland police officer acted under color of law in shooting case).

Here, Officer Garcia was acting as a police officer during the entire course of events at issue—and is still acting like a police officer, being represented and indemnified by the City of Cleveland pursuant to his police union contract. As Defendant concedes, he "fired his city-issued weapon." (Def.'s Mot. 9.) He testified that when he shot at Desmond, he considered him a "suspect." Minutes prior to the shooting, Garcia had made an investigatory stop of Desmond and Devin because he saw Devin shoplifting pop cans. Later, Cleveland's Civilian Police Review Board reviewed that conduct, found Garcia was acting in his capacity as an officer and wrongly failed to identify himself, and sanctioned him. Immediately after the shooting, Garcia dialed 911 and identified himself as an officer; followed Devin Badley around to keep track of "evidence;" then went to the cemetery where the car crashed, took "control of the scene," and forcibly detained Devin Badley. When more police arrived, they took Garcia's badge and gun and investigated him. Importantly, at all times, Garcia regarded himself as a police officer. (Garcia Dep. 172:3-175:20.) Further, as Defendant emphasizes, only "seconds" passed between his initial stop of Desmond and Devin, to the shooting, to Garcia following and detaining Devin. (Def.'s Mot. at 10.) Garcia cannot avail himself of the benefits of his official status but shed that mantle only for the instant that he shot someone to death in order to escape state actor liability under §1983.

**B. Officer Garcia is not entitled to qualified immunity for killing Desmond Franklin.**

**i. Qualified immunity is not available when the facts are in dispute.**

"When 'the legal question . . . is completely dependent upon which view of the facts is accepted by the jury,' the District Court cannot grant a defendant police officer immunity from a deadly force claim." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)); *see also Sherrod v. Williams*, S.D. Ohio No. 3:14-cv-454, 2019 WL 267175 at *27-27 (Jan. 15, 2019) ("The Court cannot grant

summary judgment on the basis of qualified immunity if there is a genuine issue of material fact 'involving an issue on which the question of immunity turns'" (citations omitted)); *accord Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Ginsburg, J., concurring) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be.") Here, the dispute of material fact described above renders summary judgment unavailable either on qualified immunity grounds or on the merits of the constitutional claim. *See Yatsko v. Graziolli,* Sixth Cir. No. 20-3754, 2021 WL 5772527, at *8 (Dec. 6, 2021) (off-duty Cleveland police officer not entitled to qualified immunity because of fact dispute over whether the man he shot and killed was the aggressor in the moment.)

In the alternative, viewing the facts as Rule 56 requires, Officer Garcia violated Desmond Franklin's right to not be unreasonably shot to death and that right was clearly established in 2020. *Saucier,* 533 U.S. at 196 (setting forth the two-pronged qualified immunity test).

### ii. Officer Garcia's shooting of Desmond Franklin was objectively unreasonable under *Graham v. Connor.*

The shooting was objectively unreasonable. It is unconstitutional for police to shoot someone who does not pose an immediate risk of serious physical harm. *Tennessee v. Garner,* 471 U.S. 1, 11-12 (1985); *Graham v. Connor,* 490 U.S. 386, 394 (1989). Under *Graham*, use of deadly force is unreasonable unless, based upon the totality of the circumstances, a reasonable officer would have done what Garcia did. *Graham* considers 1) the severity of any ongoing crime, 2) whether the person who is shot posed an immediate threat to the officer's safety or to others, and 3) whether the person who is shot was resisting arrest or trying to get away. *Id.* Here, the only crime Garcia suspected Desmond of was being a misdemeanant getaway driver for teenage theft of Peach Faygo. This occurred before the shooting and at a different location, after which Garcia

let the "crime" continue to happen and left the scene without calling for backup. At the moment of the shooting, Desmond was committing no crime, but rather was driving to continue his errands for the day until, to his fatal misfortune, his car happened to parallel Garcia's. Desmond and Devin did not even recognize that it was Garcia next to them before Garcia started shooting. At that moment Desmond posed no threat to anyone's safety, but rather had his firearm available to him— although not in his hand—for his own self-protection. Desmond was neither resisting arrest nor attempting to flee because there was no arrest and nothing to flee from. Viewing the facts in the way that Rule 56 requires and applying *Graham*, Garcia's shooting was unconstitutional.

Defendant does not apply the *Graham* test to argue otherwise on the merits, but instead downplays the fact dispute in this case and rests on his own version of the facts. (Def.'s Mot. 11-14.) Defendant's gratuitous italicization of "material" in "material fact" (Def.'s Mot. 7, 12) does not change what is material here: Officer Garcia says he shot Desmond because he saw Desmond point a gun at him; Devin Badley says Desmond's gun stayed under his leg and his hands were on the wheel. There is no video or audio showing Desmond and there are only two eyewitnesses (of whom only Garcia is a self-interested party). If a jury believes that Desmond was pointing his gun at Garcia when Garcia killed him, Plaintiff will probably lose this case. But only a jury can decide.

Defendant also incorrectly argues the law on police officer use of deadly force where there is a firearm involved. Defendant argues that "the precise position of [Desmond's] gun is irrelevant as long as Garcia *saw* [him] holding the gun" and that "[a]ny reasonable police officer would be justified in using deadly force as soon as Franklin produced a gun…" (Def.'s Mot. 14-15, emphasis in original.) Some of Defendant's cases also refer to persons "brandishing" guns. (*Id.*) It is not the law that a police officer may shoot anybody who is holding a gun. This dangerous proposition— one which not only contravenes Fourth and Fourteenth Amendment law but would gut the Second

Amendment right—has no support in the Sixth Circuit. *See, e.g., Redrick v. City of Akron,* Sixth Circuit No. 21-3027, 2021 WL 5298538 at \*4 (Nov. 15, 2021) ("mere possession of a weapon without more is insufficient to justify deadly force" (collecting cases) (denying qualified immunity where parties disputed whether plaintiff was raising his gun when officers shot him)). Instead, *Graham*'s totality test controls the analysis whether or not firearms are present. Here, Desmond was not even holding his gun, and under *Graham,* the shooting was unconstitutional.

> **iii. Officer Garcia violated clearly established law when he shot Desmond to death unreasonably; more specifically, a reasonable officer would understand the impropriety of shooting the non-threatening driver of a moving car past the face of his 17-year-old passenger while the officer's car is also moving and the officer is not looking at his target such that the driver dies and his car with his passenger speeds down a busy road in the middle of the day and crashes into a public cemetery.**

The shooting violated clearly established law. Shooting someone to death violates clearly established law unless an objectively reasonable person would have believed the victim posed a imminent threat of serious physical injury at the moment he shot them. In other words, in 2020, Desmond Franklin had a clearly established right not to be unreasonably shot to death.

"It has been clearly established in this circuit for some time that individuals have a right not to be shot unless they are perceived as posing a threat to officers or others." *Jacobs v. Alam*, 915 F.3d 1028, 1040 (6th Cir. 2019) ("we have authorized the use of deadly force only in rare instances") (citations omitted)). Moreover, where an officer's conduct "obvious[ly]" violates someone's rights, he is not entitled to qualified immunity." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *see also Hope v. Pelzer,* 536 U.S. 730, 734 (2002). It is also clearly established that when a person possesses or is holding a firearm, but does not pose a threat, a police officer may not shoot him to death. *See Campbell v. Cheatham Cty. Sheriff's Dep't.,* 47 F.4th 468, 481-82 (6th Cir. 2022) (collecting cases); *Palma v. Johns* 27 F.4th 419, 443 (6th Cir. 2022) (collecting cases);

*David v. City of Bellevue*, 706 F. App'x 847, 852 (6th Cir. 2017) (denying qualified immunity because of fact dispute whether victim had his firearm raised); *Redrick,* 2021 WL 5298538 at *4.

Here, at the moment Officer Garcia shot Desmond Franklin to death, Desmond was driving his car on his way to finish his errands, was looking out the dash with his hands on the wheel, and was not holding, let alone pointing, a firearm. Based upon the caselaw set forth above, under these circumstances, Desmond had a clearly established right not to be killed. *Garner,* 471 U.S. at 12.

To avoid this conclusion, Defendant asks the Court to define the right at issue using an absurdly granular level of specificity. (Def.'s Mot. 16-17.) Then, as with his other arguments, Defendant asks the Court to accept his version of the facts and search for precedent that matches. This is the opposite of how the Court must view the facts on a summary judgment motion. *Compare* (*id.* at 17) (characterizing Desmond's conduct as "audaci[ous]" and "unprecedented," and asking the Court to accept as true that Desmond "intentionally chase[d]" Defendant and "threaten[ed] him with a gun") *with* Fed. R. Civ. P. 56 (requiring Court to view facts in light most favorable to non-moving party). Accepting Plaintiff's facts, Officer Garcia violated clearly established law when he shot Desmond while Desmond was not threatening him with harm. Even more specifically, Garcia "obvious[ly]" violated the law when he blindly fired his gun from his moving car, into the closed passenger window of Desmond Franklin's moving car, across the body of a 17-year-old passenger, while Desmond was not pointing a gun, killing Desmond and causing his car and passenger to fly down a busy daytime road and crash. *Brosseau,* 43 U.S. at 199.

## C. Officer Garcia's other affirmative defenses fail and he is not entitled to summary judgment.

Defendant asserts multiple affirmative defenses in addition to qualified immunity, each of which is targeted at Plaintiff's state law claims, and each of which fails. Importantly, "in the civil context in Ohio, the party who raises an affirmative defense bears the burden of proving the

defense." *Hood v. City of Columbus,* S.D. Ohio No. 2:17-cv-471, 2021 WL 2313469, at *4 (June 7, 2021) (citations omitted). "When a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper only if the record shows that the defendant established the defense so clearly that no rational jury could have found to the contrary." *Snyder v. Kohl's Dep't Stores Inc.,* 580 F. App'x 458, 461 (6th Cir. 2014) (cleaned up.) As to each of the affirmative defenses addressed below, this standard applies; Officer Garcia fails to meet his burden; and summary judgment is not warranted.

### i. The statute of limitations does not bar any of the claims here.

Plaintiff's claims for survivorship and breach of duty are not barred by the statute of limitations.[3] Plaintiff's survivorship claim, like his wrongful death claim, is simply a statutory method by which Desmond Franklin's estate may recover damages after his death. *See Cunning v. Windsor House, Inc.,* 2023-Ohio-352 at ¶52 (Ohio Ct. App. 2023) Ohio's survival statute, Ohio Rev. Code §2305.21, allows the estate to recover for the pain and suffering Desmond endured after he was shot in the head in violation of his rights. *See id; Monnin v. Fifth Third Bank of Miami Valley, NA,* 658 N.E.2d 1140, 1149 (Ohio Ct. App. 1993) ("'survivorship' [claims] are not claims for relief, as such, but are statutory actions by which certain claims for relief may be brought.") Such a claim does not have a one-year statute of limitations. It is a vehicle for other causes of action which here include Desmond's substantive state and federal law claims. Moreover, Defendant does not argue any basis, nor cite a single case, for the proposition that the survivorship claim here is statutorily barred, so Defendant waives that position which is in any event incorrect. (Def.'s Mot. 18); *McPherson*, 125 F.3d at 995–96.

---

[33] Plaintiff voluntarily abandons his claim for intentional infliction of emotional distress.

Likewise, the statute of limitations does not bar Plaintiff's breach of duty claim. This claim is based upon Officer Garcia's duty as a police officer to protect Desmond Franklin instead of harming him, and the breach of that duty which proximately caused Desmond "bodily injury" (here, death, pain, and suffering). Such a claim has a two-year statute of limitations under Ohio law. Ohio Rev. Code §2305.10(A). The breach of duty that Plaintiff pleaded, and that the evidence has borne out, is as follows. Officer Garcia had a duty as a police officer to protect, rather than endanger, Desmond Franklin, Devin Badley, and innocent bystanders. Officer Garcia breached his duty as an officer by engaging Devin and Desmond at the Convenient store for suspected pop theft but failing to call for backup or to identify himself as an officer—actions for which Cleveland later sanctioned him. He further breached that duty by firing his gun off blindly from his moving car into another moving car, so erratically that he exploded his own side-view mirror, killing the driver, causing a car crash, and endangering the public. Garcia further breached his duty by following Devin Badley around at a distance after the shooting rather than going to the scene of the car crash he caused to render aid to Desmond or check for other injured people. This breach of duty—setting off a deadly course of events of which one part was a shooting—proximately caused Desmond's injuries, suffering, and death. Moreover, as Plaintiff pleaded and will prove, Officer Garcia's conduct was not merely negligent, it was reckless, a different and higher standard which Plaintiff admittedly must satisfy to overcome the Ohio state statutory immunity defense that Defendant asserts. (Def.'s Mot. 21, citing Ohio Rev. Code §2744.03(A)(6)(b).)

Plaintiff acknowledges the Ohio Supreme Court authority *Love v. City of Port Clinton,* 524 N.E.2d 166, 167 (Ohio 1988), which found that the one-year assault and battery statute governed an unlawful-handcuffing assault. However, Plaintiff argues here that Garcia's reckless breach of duty arose when he created the conditions from which the deadly shooting flowed, not only at the

moment of the shooting. *Cf., e.g., Hidey v. Ohio St. Highway Patrol,* 689 N.E.2d 89, 93 (Ohio Ct. App. 1996) (officer conduct governed by 2-year statute where he sexually harassed arrestee, even though touching was involved); *Tichon v. Wright Tool & Forge,* 2012-Ohio-3147, at ¶¶8-11 (Ohio Ct. App. 2012) (affirmative conduct that created conditions for injury governed by 2-year statute). For these reasons, the statute of limitations does not bar Plaintiff's claims.

### ii. A jury must decide whether to award Desmond Franklin's estate survivorship damages for his pain and suffering.

A jury should decide Plaintiff's survivorship claim to recover damages based upon the pain and suffering he endured after Officer Garcia shot him in the head and caused his car to crash. It is Defendants' burden at summary judgment to show that no reasonable jury could find that Desmond suffered conscious pain and suffering for which his estate is entitled to compensation. Defendants have not met that burden. The parties do not dispute that where a person was "not completely unconscious during the interval between injury and death" a jury must determine survivorship damages. *Laverick v. Children's Hosp. Med. Ctr. Of Akron, Inc.,* 540 N.E.2d 305, 308 (Ohio Ct. App. 1988.) Here, a jury should determine whether, and how much, Desmond suffered when a bullet struck him in his head, he began gushing blood and brain matter all over his little brother, and he slumped over and crashed his car before paramedics concluded he was dead. Devin tried to revive him for minutes, until he "gave" Devin his "last movements." *Cf. Smith v. Jones,* N.D. Ohio No. 1:13-cv-744, 2016 WL 455617, at *12 (Feb. 5, 2016) (survivorship award reasonable where police gunshot made decedent "unable to make purposeful movement" but not necessarily "instantly" dead) (citing cases); *Butcher v. Bryson,* M.D. Tenn. No. 3:12-251, 2014 WL 4385904, at *7-8 (Sept. 5, 2014) (jury could find conscious pain and suffering under similar Tennessee survival statute where victim of police shooting was "gurgling prior to his death"). Defendant has not met his burden to show that no jury would disagree.

17

### iii. Ohio's state civil liability for criminal acts statute is not an applicable affirmative defense here, according to its plain language, which Defendant ignores.

Ohio's civil liability for criminal acts statute, by its own plain language and under the only existing applicable case law, does not bar Plaintiff's claims. First, when Defendant argues that Ohio Revised Code §2307.60(B)(2)(b) bars the claims here, he omits reference to section (B)(4) of that statute which excludes civil rights claims. Under the statute's own plain language exception, it does not apply here. Additionally, Defendant argues that Desmond Franklin "committed multiple felonies" and is thus barred from bringing suit, but does not establish that any of Desmond's own alleged acts was the proximate cause of his death, which is what the statute requires. For this additional reason, Defendant fails to meet his burden to establish that this statute is a bar to suit.

In the only two opinions to address this issue in the context of a civil rights claim against a police officer who shot someone to death, Judge Sargus, after analysis, reached the same conclusion. *Hood v. City of Columbus,* S.D. Ohio No. 2:17-cv-471, 2021 WL 2313469, at *4-6 (June 7, 2021) (defendants did not meet their burden to show Ohio Rev. Code §2307.60(B)(2) barred plaintiff's claims because defendants failed to "set forth the[] elements" of the crimes plaintiff supposedly committed nor "connect them to the record evidence," and because defendants failed to "demonstrate that these alleged crimes…were the proximate cause of [plaintiff's] death," and because the facts of the police shooting were disputed); *King v. City of Columbus,* S.D. Ohio No. 2:18-cv-1060, 2021 WL 3367505, at *8 (Aug. 3, 2021) (§2307.60(B)(2) still did not bar plaintiff's wrongful death claim, on defendants' renewed summary judgment motion in same police shooting case, because that statute does not bar claims for "intentionally tortious conduct [or] alleged violations of the United States Constitution" (citing Ohio Rev. Code §2307.60(B)(4)).)

### iv. Ohio's state law tort immunity statute is not an applicable affirmative defense here, and Defendant waived his argument otherwise.

Defendant is not entitled to Ohio state statutory immunity. As a threshold matter, Defendant's spare, single-paragraph reference to the immunity statute is insufficient to preserve it as an argument in favor of summary judgment and the Court should deem it waived. *McPherson*, 125 F.3d at 995–96. In the alternative, under Ohio Rev. Code §2744.03(A)(6)(b) a police officer is not entitled to immunity if he acted "reckless[ly]." For all the reasons discussed above, Officer Garcia's entire course of conduct which here hurt and killed Desmond Franklin and endangered him, his passenger, and the public, were reckless. Further, Defendant is incorrect that a finding of objective reasonableness as to a federal Fourth Amendment claim precludes a finding of recklessness as to a state breach of duty claim. (Def.'s Mot. 21.) The United States Court of Appeals for the Sixth Circuit consistently holds that these analyses are different and has repeatedly sustained state law claims arising out of similar police shootings even when finding against plaintiffs' parallel federal claims. *See, e.g., Stewart v. City of Euclid,* 970 F.3d 667, 677 (6th Cir. 2020) (jury could find police shooting of young man in car reckless under Ohio law despite disposition of federal claims.)

### v. Ohio's self-defense and castle-doctrine defenses are not applicable at this stage because of the factual disputes discussed above.

Garcia's self-defense theory is not a basis for summary judgment. Plaintiff does not dispute that *if* the Court found that Officer Garcia was not acting in his official capacity when he killed Desmond Franklin, then Officer Garcia could decide, at trial, to attempt to prove the affirmative defense that he was acting to protect himself when he shot his gun. At this stage, however, that affirmative defense is not available and Defendant has not borne his burden to prove that it shields him. As an initial matter, self-defense or not, a police officer's deadly shooting is actionable if he

was objectively unreasonable under clearly established law. Subjectivity is not in play. More importantly at this stage though, Defendant's self-defense theory only makes sense under his version of the facts, and he is not entitled to his own version of the facts at summary judgment. Fed. R. Civ. P. 56. If a jury later decides that Officer Garcia was not acting as a police officer, and that Desmond Franklin chased him down and pointed a gun at him, and that Garcia had an objectively reasonable fear for his life, then Plaintiff might not dispute that he could argue self-defense. At present, however, the disputed facts are that Desmond was driving on his way to continue his errands, he had his firearm tucked under his leg for protection after Garcia confusingly harassed him, and Garcia shot him to death at the wheel before he had time to look away from the road, let alone raise his gun. Shooting at someone who is not threatening you is not self-defense.

### vi. Ohio's punitive damages rules are not applicable at this stage because his claims survive and punitives belong on a jury questionnaire.

Ohio law is "well settled that punitive damages are available for personal injury" caused by "reckless" acts, and that "the right to punitive damages continues when an injured plaintiff has died." *Whetstone v. Binner,* 2016-Ohio-1006, at ⁋16 (Ohio 2016) (citations omitted). Plaintiff does not dispute that he made a demand for punitive damages here based upon survivorship. For the reasons discussed above, however, the Court should not grant summary judgment on survivorship, and so Plaintiff should put the punitives request to the jury.

## IV. Conclusion

For the foregoing reasons, Plaintiff asks the Court to DENY Defendant's Motion for Summary Judgment as to all claims except the IIED claim, which Plaintiff voluntarily drops. Plaintiff further asks the Court to SUSTAIN Plaintiff's evidentiary objections such that the parties need not relitigate those issues during pretrial motions *in limine.* Plaintiff further asks the Court to set this case for trial without delay. Counsel is available for a trial by jury as early as June 1, 2024.

Respectfully submitted,

*s/ Elizabeth Bonham*
Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
Terry Gilbert (0021948)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square Ste 1900
Cleveland Ohio 44113
T: 216-241-1430
sarah@FGGfirm.com
elizabeth@FGGfirm.com
terry@FGGfirm.com

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on March 1, 2024, I filed a copy of this opposition brief electronically. Notice and service and access to this filing are available to all parties through the Court's CM/ECF system.

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
*One of the Attorneys for Plaintiff*

**Certificate of Compliance with Local Rules**

I certify that in conformity with the limitations set forth in Northern District of Ohio Local Rule 7.1, this Opposition is 20 pages long. Further, I certify that this Opposition contains a table of contents, table of authorities, and statement of the issues, as well as these certifications, none of which are included in the page limit.

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
*One of the Attorneys for Plaintiff*

**Plaintiff's Exhibits Cited with Exhibit Access Locations—for the Court's Reference**

<u>Exhibits filed for the first time with Plaintiff's brief</u>

Pl.'s Exh. 1: Cuyahoga County Medical Examiner's Autopsy Report and Findings
    Attached as an exhibit to this filing

Pl.'s Exh. 2: Report of Plaintiff's ballistics and reconstruction expert David Balish
    Attached as an exhibit to this filing

Pl.'s Exh. 3: Deposition transcript of Plaintiff's Expert David Balash
    Attached as an exhibit to this filing

Pl.'s Exh. 4: Entire recorded police interview of Defense witness Jonathan Schubert
    Available at this link:
https://www.dropbox.com/scl/fi/5ncopaxzr5pnr3b21olta/Franklin-Pl-s-Exh-4.mp4?rlkey=ldxxbxl8d6b5t27bvbcy4xy8i&dl=0

Pl.'s Exh. 5: On-scene 911 call recording of witness Joe Becka
    Available at this link:
https://www.dropbox.com/scl/fi/mboxra9admvcolatmnqyo/Franklin-Pl-s-Exh-5.wav?rlkey=i0sibgu7jknf7deaollpr3a3l&dl=0

<u>Exhibits cited in Plaintiff's brief that were previously filed by Defendant</u>

Def.'s Manually Filed Exh. A-1: 911 call recording of Jose Garcia

Def.'s Exh. D: Deposition transcript of Jose Garcia

Def.'s Exh. F: Deposition transcript of Devin Badley

Def.'s Manually Filed Exh. G-1: video compilation of the at-issue cars and shooting

Def.'s Exh. J: Deposition transcript of Defendant's Expert Matthew Noedel