# DAVID E. BALASH

FIREARMS EXAMINER * FORENSIC SCIENCE CONSULTANT
41906 Echo Forest Ct. * Canton, Michigan 48188
Phone (734) 981-6788* Fax (734) 981-6459

August 11, 2023

FG+G
Attorney Elizabeth Bonham
50 Public Square, Suite 1900
Cleveland, Ohio 44113

     RE:    Adam Fried . Jose Garcia
               Case No. 1:22-CV-00061-DAP

Ms. Bonham:

You have asked me to review the shooting issues in the above captioned matter and provide my opinions and conclusions as an expert in the field of firearms and forensic science The following police documents, scene videos, scene photographs, autopsy photographs, autopsy protocol, depositions and witness statements were reviewed and used by the undersigned as source material for the opinions and conclusions reached in this report.

MATERIAL REVIEWED

- Franklin-OPS-000027 (Body Cam Sgt. Lentz)
- Franklin-OPS-000019 (OPS initial interview P.O. Garcia)
- Franklin-OPS-000017 (OPS second interview P.O. Garcia)
- Franklin Ohio AG PRR-001052 (interview of Garcia)
- Franklin Ohio AG PRR-000084 (Goudy interview summary)
- Franklin Defendants ID-000128 (911 call440-511-0710)
- Franklin Cuyahoga Co.PRR-000484 (5/7/22 interview of Garcia)
- Franklin Cuyahoga Co.PRR-000485 (5/7/22 interview of Garcia)
- Franklin Defendants Production-000370-000380 (Defendant's internal investigation of disposal of cars)
- Franklin Defendants Production-000632-000716 UDFIT 20-1 (Defendants internal investigation of incident)
- {no bates} Defendants video highlights of incident
- Franklin Defendants Production-000622-000531 SKM-C300i22081916560 (Sheriff's list of evidence not destroyed)

- {no bates} 308 crime scene photos (folder:CS171922 All Complete)
- Franklin-CCME-00001-000046 (medical examiner file)
- Franklin _Defendants Production_ 000717-000728
- Franklin _Defendants Production_000471 (Garcia second interview)
- Franklin _Defendants Production_000480-000481 (AI interview of Garcia)
- Franklin _Defendants Production_000478 (interview of Devin Badley)
- Franklin_OPS_000018 (OPS interview of Badley)
- Franklin _Defendants Production_000458 (witness interview Esson)
- Franklin _Defendants Production_000459 (witness interview Ortiz)
- Franklin _Defendants Production_000460 (witness interview Sgt. Lentz)
- Franklin _Defendants Production_000461 (witness interview Stahovec)
- Franklin _Defendants Production_000462 (witness interview Torres)
- Franklin _Defendants Production_000463 (witness interview Lopez)
- Franklin _Defendants Production_000464 (witness interview Hategan)
- Deposition of Jose Garcia – transcript
- Deposition of Devin Badley – transcript
- Matthew Noedel's photographs and video
- Franklin_Ohio AG_000001-000238_Binder1_Redacted (documents of County investigation)
- Franklin_Ohio AG PRR_000401-000422_Binder1_Redacted (documents of County investigation)
- Franklin_Ohio AG PRR_000423-000591_Binder1 Redacted (documents of County investigation)
- Franklin_Ohio AG PRR_000243-000394 (photos)
- Franklin_Ohio AG PRR _000592-001002 (photos)
- Franklin_OPS_000033-000067 Audio Forensic Services OPS-20-076
- Franklin_OPS _000143-000199 Investigative file section II (documents of City investigation reports)

QUALIFICATIONS FOR OPINION

The qualifications allowing me to offer opinions and conclusions on the above-mentioned shooting are based on the following:
- My review of all the above listed material and evidence.
- My experience as a Michigan State Police Officer for over 25 years rising to the rank of D/Lt. in charge of the Firearms, Tool-Mark and Bombs and Explosive Unit of the MSP Northville Forensic Science Laboratory

- My experience for over 20 years as a member of the Michigan State Police Forensic Science Laboratory in the Firearms Identification, Tool Mark, Bombs and Explosive Unit.
- The examination of hundreds of firearms for safety and function testing prior to firing as well as determining the causes of reported firearm failures.
- My experience with the Michigan State Police as a Crime Scene Analyst participating in and supervising hundreds of crime scene investigations during my years with the department.
- My experience at photographing and collecting evidence at crime scenes while with the Michigan State Police.
- My experience at photographing, participating in and collecting evidence at autopsies for over 20 years.
- Training sessions on crime scene reconstruction both as a member of the Michigan State Police and as a civilian examiner.
- My experience in investigating shooting crime scenes for over 20 years as a member of the Michigan State Police and then continuing to utilize that experience as a self-employed examiner in assessing shooting crime scenes for the past 30+ years.
- My experience at having examined hundreds of shooting victims at crime scenes, autopsies, hospitals, and funeral homes.
- My experience at taking and interpreting X-rays in bomb squad work and training as well as at using and interpreting X-rays at crime scenes, autopsies, and hospitals for the past 50+ years.
- I continue to follow new developments in the field of forensic testing through caseload and review of journals in the subject area.
- Training and review of new materials/techniques through the internet.
- See a copy of my C.V. for more specific information

METHODOLOGY

My CV and the summery in this report contain my qualifications to provide expert testimony in this case. The evidence listed in this report and its appendices provided sufficient facts and data for me to evaluate and reach my opinions and conclusions. I evaluated the material provided according to my qualifications including my experience and training in firearms identification (ballistics), crime scene reconstruction, firearms, and law enforcement practices. I did not assign credibility to any witness but rather reviewed the testimony and other evidence based upon my own training and experience. After performing this analysis, I formed my opinions and conclusions to a reasonable degree of professional certainty.

INFORMATION

The following is a brief summary of the shooting of Desmond Franklin by Cleveland Police Officer Jose Garcia as understood by the undersigned from the accounts of the shooting as given by Officer Garcia, Devin Badley and the investigative files provided to me for review.

On April 9, 2020 Officer Jose Garcia was enroute to the Cleveland P.D. to work the 2nd shift. He was driving his personal vehicle, a silver Honda sedan. As he drove down Forestdale Avenue, he encountered a maroon Ford vehicle in the parking area of a convenience store at the intersection of Pearl Rd. and Forestdale Avenue. From the road Officer Garcia observed the driver of a maroon Ford, now known as Desmond Franklin, in the driver's seat of the vehicle while the passenger, now known to be Devin Badley, was reportedly stealing soda from a delivery truck in the parking lot of the convince store. A verbal exchange takes place between Officer Garcia and Desmond Franklin the driver of the maroon Ford. The content of the exchange is vastly different in the account of Officer Garcia and that of Devin Badley (the passenger of the Ford and the person reportedly stealing the soda). After the verbal exchange, the video I reviewed depicts Officer Garcia in his Honda proceed to the stop sign at Pearl Rd. and turns right unto Pearl Rd. slowly and then is gone from view. Subsequently the Ford leaves on Forestdale and heads across the street to the Wendy's parking area and then is seen shortly exiting Wendy's on Pearl Rd. also turning to the right. Officer Garcia has stopped his Honda on Pearl Rd. (inside lane) at the intersection of Willowdale for the red light and the maroon Ford is seen in the video approaching in the outside lane on Pearl Rd. to where the Ford nearly comes abreast of Officer Garcia's Honda as the light changes and both cars begin traveling forward, however not very fast. Shortly after passing through the intersection (approximately 50-100 yards – my estimate) the Ford has at first come abreast of the Honda and then goes by and continues to accelerate while the Honda slows down.

Officer Garcia states that the driver of the Ford (Desmond Franklin) pointed the barrel of a gun at him at some point near the intersection. According to Garcia at which time he draws his service firearm from a holster on his right hip and fires his service weapon at the Ford. Officer Garcia reports he fired 3 shots; however, investigation later showed and he acknowledged the he fired 5 shots in total at the car. Shortly after or while the shots were being fired, the video I reviewed depicts the Ford accelerating away from Officer Garcia's Honda to where it crashes first into the cemetery fence and then head on into a tree where the vehicle comes to a rest. The driver Desmond Franklin remains (deceased) in the driver's seat of the vehicle. However, the passenger (Devin Badley) exits the crashed vehicle and runs across Pearl Rd. to a tire store, removes clothing and then runs

back to the crashed vehicle. Shortly Officers from Cleveland P.D. arrive, Officer Garcia comes to the crash site and other Cleveland officers arrive to secure the scene, detain Devin Badley, and removed Desmond Franklin from the scene. Based upon the video and audio records I reviewed, once other officers arrive at the scene a gun was recovered on the driver's side floor of the vehicle.

## COMMENTS AND OBSERVATIONS

The quality of the investigation into the shooting death of Desmond Franklin by the Cleveland Police Department, the Cuyahoga County Sheriff's Office, Internal Affairs, and the Cuyahoga County Attorney General all appear to this examiner as superficial in nature. The shooting event was partially captured on surveillance tapes making the investigation somewhat easier for the investigators, however when the evidence was collected, the vehicles processed and the interviews conducted, what correlation to the statements of Officer Garcia with the evidence were made to corroborate his version of the shooting? None that I can see and there were a great number of oversights in collecting and analyzing evidence apparent to this examiner.

The following are some of the areas that this examiner found lacking in this investigation, actions that should/would have been taken in any investigation resulting in the death of someone by a police officer if the desired outcome was to fully investigate this event. The version of the shooting event mandates that the following actions and evidence collections should have taken place. These observations are not in any specific order and will be discussed  later in this report.

- Officer Garcia should have been fully photographed at the scene and his clothing should have been collected and preserved for laboratory analysis. I therefore have no ability to opine on any analysis of his clothing and I rely on upon photographs to evaluate his clothing, weapon, and holster.
- Officer Garcia makes limited verbal statements to the investigators at the scene, however there were no recorded statements given by Officer Garcia.
- Officer Garcia's weapon and HOLSTER should have been collected at the scene. I rely on upon testimony and photographs to evaluate the holster.
- Officer Garcia's vehicle should have been impounded and not allowed to be returned to him quickly so that it could be sold by the officer within a week of the shooting.
- The victim's car was destroyed within 1 month of the shooting, thereby not allowing anyone else to examine the vehicle.

- The evidence technicians processed the vehicles and stated that they found bullet holes in the maroon Ford driven by the deceased and fired cartridge cases and a bullet strike in the Honda driven by Officer Garcia, however that was the extent of the report, where is the correlation of the bullet strikes, the angles and direction? My observations of this evidence are based on photographs and limited reports.
- Investigators failed to identify a bullet strike in the front passenger side window glass of the Ford sedan driven by Desmond Franklin. I identified this additional bullet strike
- Apparently, no investigator noticed that the driver's side window of Officer Garcia's vehicle was fully down when the vehicle was at the red light on Pearl Rd.
- The autopsy report states that the fatal bullet was directly from side to side, therefore how does this take place if the driver is pointing a firearm and looking at Officer Garcia?
- No investigator seemed concerned that Officer Garcia did not take evasive action immediately when someone pointed a gun at him. By evasive action I mean braking (hard), swerving, accelerating very quickly, stopping or any other means available to disengage from the threat.
- No investigator seemed interested in how Officer Garcia could draw and shoot his holstered weapon while seated and wearing a heavy waist jacket that would have been covering his "concealed" firearm while obeying the law and wearing his seatbelt with a shoulder strap.
- No investigator questioned the bullet strike to Officer Garcia's left outside rearview mirror with Officer Garcia claiming that his driver's side window was ½ way up. The trajectory rod shown in police photographs preclude the angle if the window were ½ way up.
- No investigator questioned why the suspect firearm was found on the driver's side floor and not on the passenger side area.
- No investigator questioned that the suspect firearm had the safety on and was incapable of being fired in that position.
- Did investigator's find/look for side window glass on Pearl Rd. which may have assisted in the investigation?
- Was there any attempt to re-assemble the outer plastic covering of Officer Garcia's rearview mirror to establish the bullet flight path more precisely?
- Why was Officer Garcia allowed to simply return home after the shooting and not proceed to the police department? Who made that decision?
- Did investigators attempt to ascertain which shot struck Mr. Franklin and where in the sequence of shots did that occur.

- Investigators should have been aware that people that drive standard shift vehicles do not take their hands off the shift lever from first through second or third as a normal practice, so Officer Garcia should have had his right hand on the floor shift lever when he was leaving the red light as shifting into second is very quick after the vehicle moves forward a short distance.
- A responding Cleveland Police Officers removed the firearm from the floor of the Ford and then put the weapon back into the car. This action was totally unnecessary as multiple uniform officers were present and the victim of the shooting was unresponsive. This action contaminated the firearm as evidence
- which would include the exact position of the firearm, DNA material and blood staining and patterns present.
- The blood drops noted by the undersigned on the side of the firearm, from what I could see, appeared to be drops that fell straight down and did appear to the undersigned to be propelled blood.

The material listed above indicates the areas of this investigation that I found deficient in this investigation and the reason I listed these areas is that I can only rely on the evidence available to me instead of the evidence I should have had available for examination had that evidence had been collected, analyzed, and retained.

The account of the shooting as offered by Officer Garcia is that when he is stopped at the traffic light in the inside lane, he recognizes the maroon Ford coming up fast on the outside lane and as the light changes he tries to accelerate away. According to Officer Garcia, it is at this time he sees the driver looking at him and pointing the barrel of a gun directly at him. Officer Garcia immediately draws his weapon (demonstrating the drawing and firing in less than ½ second at his initial interview – my estimate on the time) and began to fire his weapon at the suspect vehicle. No one asks if he had to move his jacket from over his weapon or if the bucket seat hindered his drawing of his weapon or if he had his seat belt with shoulder strap in place which would further hinder his drawing of his weapon. The mere confines of a small vehicle like the Honda with bucket seats and seatbelt would render a move as fast as he indicated impossible, in this examiner's opinion. This also does not consider the fact that the holster he REPORTEDLY was wearing had a safety release mechanism, however the holster was not taken into evidence for examination.

The below shown photograph was captured from the video covering the intersection of Willowdale and Pearl Rd. Officer Garcia's Honda is in the curbside lane and the maroon Ford is not yet at the intersection. The driver's side window is shown clearly in the fully down position which Officer Garcia started as late as this year (2023) at his deposition that the window was only ½ down.



Window is fully down at the intersection or before

Officer Garcia states that the driver of the maroon Ford looked at him and pointed the barrel of a gun at him and that is the reason he drew and fired his weapon. The below photograph is of the recovered firearm taken from the driver's side floorboard as it was reportedly laying with the barrel pointed to the driver's door.



Safety is on. The trigger is disconnected. The gun cannot be fired in this configuration.

The trigger moves freely - no connection to the hammer

This firearm has a trigger disconnect when the safety is in the on position (the safety is on in this police photo), therefore anyone holding the gun would know immediately by

putting their finger on the trigger that the weapon cannot be fired in this condition because the trigger has no resistance to movement and is not connected to the hammer. The driver Desmond Franklin would have immediately known that the weapon was not capable of being fired in this condition.

The Investigators that processed the maroon Ford identified 4 separate bullet strikes in the passenger side of the Ford, however they failed to note the damage to the front passenger window, shown in the photograph below, which I identify as a bullet entrance point on the window. Based on my review of all the bullet strikes and the trajectories in both vehicles it is my opinion that the bullet strike to the glass of the front passenger side door was the first shot fired and the other bullet strikes are from subsequent shots. The below shown bullet entry hole in the front passenger window is, in my estimation, the point of entry for the fatal bullet (a partial hole and radiating fracture lines from that hole), however with the vehicle destroyed no further examinations are possible. An examination of the fatal bullet's lead core should reveal fragments of window glass present in the lead core.



IMG_0027 JPG Police Photo

The below photograph IMG_0079 is of Mr. Franklin's maroon Ford sedan. In this photograph the police identify 4 bullet strikes to the side of the vehicle, These are identified with placards #3, #4, #5 & #6 while failing to identify the bullet entrance hole

in the remaining side window glass located just above and to the right (when viewed from the passenger side of the vehicle) of the holes marked #3 and #4.



Probable Bullet Strike

IMG_0079 JPG Police Photo

The next photograph below, IMG_0174 JPG is of Officer Garcia's Honda sedan. In this photograph the police identify a bullet strike to the left outside rearview mirror. A trajectory rod (indicating the flight path of the bullet causing this hole) is depicted. This bullet flight path is not possible (in this examiner's opinion) if the driver's side window was ½ way down as claimed by Officer Garcia. The trajectory rod (through the outside mirror) is pointed slightly downward, however without assembling the outer plastic portion of the mirror to estimate the flight path more accurately, this is only an estimate of the bullet's path through the mirror. Angles were shown using trajectory rods, however there is no report on the findings or conclusions of these examinations. The undersigned finds the failure to maintain these two vehicles in evidence for an independent inspection on a police shooting is disquieting.



IMG_0174 JPG Police Photo

Screen shot from an Officer body cam of Officer Jose Garcia as he was dressed on the day of the shooting.



Holster on the waist. The jacket is tucked behind the holster at the scene

Moose Logo & Sleeve Logo



Moose Logo

Sleeve Logo

The above is a screen shot of Officer at what I believe was an Internal Affairs interview, however the date was not recorded that I noted. The waist jacket Officer Garcia is wearing at the interview appears to be the same jacket he was wearing on the day of the shooting; however, this photograph more clearly shows the jacket and that is why it is included at this time. The waist jacket is heavy duty and goes over the waist area of the wearer, which when off duty for an officer fully conceals his weapon under the jacket.

Officer Garcia at the scene (screen shot) had his jacket tucked behind his holstered weapon, however when carrying your weapon off duty it is concealed and the jacket would fully cover the gun and holster, therefore one must ask how could he have drawn his weapon as fast as he claimed especially from a seated position in a bucket seat. Based on my experience and training, the jacket and how he would hade worn it in his off-duty role would have prevented him from drawing his weapon quickly.

The Cuyahoga County Medical Examiner determined that Desmond Franklin died from a single gunshot wound to the right temple 4" below the top of the head and 4 1/4" right of the anterior midline. The entry wound was recorded as ½" x 3/8" in size. The wound description is that of a damaged bullet striking Mr. Franklin and in the opinion of the undersigned this damage was caused when the bullet penetrated the front passenger side door window. The Medical Examiner states "The bullet travels from right to left and slightly front to back, without additional significant up/down variation." This description

of the wound clearly indicates that Desmond Franklin was looking/facing forward when the bullet struck him, he was not looking to his right pointing a firearm as indicated by Officer Garcia at the time he was shot. After being struck by the fatal bullet, the vehicle accelerates north on Pearl Rd. until striking the cemetery fence, at which time I believe the air bags were deployed and then continues until striking the tree in the cemetery which forcibly propels Mr. Franklin into the windshield resulting in the damage noted to the vehicle windshield. The air bag shows smeared blood, which to this investigator indicated that Desmond Franklin was bleeding prior to the deployment of the air bag and then the air bag deflates allowing the unbelted driver to be thrown into the windshield. If (as stated by Devin Badley) the firearm were under the right leg of Mr. Franklin the above scenario would explain how the firearm came to be found on the driver's side floor with the muzzle pointing towards the driver's door. This examiner is of the opinion that the firearm claimed by Officer Garcia to have been pointed at him when he fired his shots should have been found on the passenger's side of the vehicle and not on the driver's side of the vehicle as was the case. The vehicle has a center console which would prevent the weapon from traveling from one side to the other due to a physical blockage between the two seats.

Officer Garcia stated that he fired his weapon in defense of his life, however in his deposition on 2/22/2023 Officer Garcia makes the following statements in response to questions posed to him:

Garcia deposition Pages 133-134

Q    When you raised your firearm and pointed it at Desmond Franklin on Pearl Rd., did you stick the barrel of your gun out of the window?
A    I don't recall sticking it out of the car window.

Garcia deposition Page 135

Q    **When you were pointing your gun, did you see Desmond Franklin at that point?**
A    No. When I -- when I had the -- my weapon towards that direction, I had my hand on the steering wheel, and I looked forward to keep my car in the lane because we were still moving.

Garcia deposition Page 136

**Q    When you were pointing your gun, did you ever look over at Desmond or were your eyes forward on the road the whole time?**

A    On the road.

**Q    So you kept your eyes on the road.**

A    Yes.

**Q    The whole time you were pointing the gun?**

A    When I -- yes, I kept my eyes on the road.

**Q    At what point did you shoot the gun?**

A    When I -- when I was here at this level.

**Q    You're gesturing right below your face -- right? -- across your body?**

A    Across my body.

Garcia deposition Page 137

**Q    Okay.  Can you just verbally describe to me from when you unholstered it to when you shot it, what course did the gun and your body take?**

A    I unholstered my weapon with my right hand, came across my chest and pointed towards the car direction, and I was still looking at the road, and then I fired my weapon.

## OPINIONS AND CONCLUSIONS

After carefully reviewing the material listed in this report the undersigned is of the opinion that all the investigative agencies involved in this shooting event failed to adequately pursue the evidence, collect the evidence, and preserve the available evidence and to correlate that evidence with the version of the shooting event as offered by Officer Garcia.

Based on the ballistics and other physical evidence in this case, and based upon my experience and training, it is my opinion that (1) Desmond Franklin was not pointing a gun when Officer Garcia shot him, (2) Desmond Franklin was not looking at Officer Garcia when Officer Garcia shot him, (3) Officer Garcia's drawing of his weapon and the firing of his weapon do not match the testimony and interviews that he provided on this case, (4) the bullet that fatally struck Desmond Franklin was the first bullet fired by Officer Garcia and this bullet entered through the passenger's side front door window while Mr. Franklin was looking straight ahead, and (5) the two cars were parallel to each other, or Desmond Franklins car was slightly ahead of Officer Garcia's car, when Officer Garcia began firing.

The evidence suggests Desmond Franklin was not pointing a gun at Officer Garcia when he was shot but rather, he was looking forward. The location of the fatal wound to Mr. Franklin, the final location of the firearm in his vehicle (on the driver's side floor), the blood deposits on the weapon as well as the bullet strikes to his vehicle.

In the opinion of the undersigned the evidence suggests that Officer Garcia's drawing of his weapon and shooting of his weapon did not occur in the manner he testifies to which includes the fact that Officer Garcia's window is already fully down and not in the ½ down position he stated when he is stopped at the red light on Pearl Rd. When Desmond Franklin's car pulls next to Officer Garcia's vehicle if Officer Garcia's window were only ½ way down the trajectories of the bullet strike to his mirror as well as the bullet strikes to the Ford would not be possible. The fact that the gear shift and bucket seats of Garcia's car his heavy jacket, the holster release, he could not have drawn his weapon with the reaction time needed to shoot at Desmond Franklin after reportedly seeing Desmond Franklin point a gun; it is more likely his weapon was already unholstered and either on his lap or in his hand when he decided to shoot.

The video shows Officer Garcia turning on Pearl Rd., however he hesitates his vehicle on Pearl Rd. apparently looking at the Franklin vehicle. When Officer Garcia notices the maroon Ford coming up fast in the outside lane he has his driver's side window fully down, the car is in 1st gear, however his hand is not on the shift lever. In the opinion of the undersigned Officer Garcia adjusts his seatbelt (if needed) and pulls his jacket out of the way and either has his right hand on his weapon or he has removed his firearm from the holster and has it in his lap in anticipation of a confrontation. It is not possible for Officer Garcia to have been "surprised" by the pointing of a gun and been able to react and draw his weapon in the amount of time he claims in his interviews and deposition testimony.

The undersigned reserves the right to modify any of the expressed opinions and conclusions reached in this report if unreviewed or new  information becomes available.

ATTACHMENTS TO REPORT

- A copy of my C.V. is attached
- A copy of my testimony document is attached
- A copy of my fee document is attached.
- I have not had any published articles in the past 10 year

Respectfully submitted,

David E. Balash

# DAVID E. BALASH

FIREARMS EXAMINER * FORENSIC SCIENCE CONSULTANT
41906 Echo Forest Ct. * Canton, Michigan 48188
Phone (734) 981-6788 * Fax (734) 981-6459 * Cell (734) 678-7507

## CURRICULUM VITAE

**PERSONAL:**   Born: Detroit, Michigan 1-19-45
Raised: Bay City, Michigan
Married for over 55 years with 2 children

**CURRENT**   3-1-92 – Present. I have been working as an Independent Firearms Examiner/Forensic Science Consultant. This work entails examination of evidence, case evaluations and crime scene reconstruction consistent with work I performed at a crime laboratory.

**POSITION:**   March/2000 – May/2001 Supervision of the Oakland County Sheriff's Department Crime Laboratory Firearms Identification Unit in Pontiac, Michigan including responsibility for the training of a deputy sheriff as a firearms examiner.

**EMPLOYMENT HISTORY:**   Michigan Department of State Police - Enlisted 9-18-66 and graduated from recruit school on 12-2-66 and assigned to the Niles Post. Transferred to the Sandusky Post from 5/69 until 12/71. Assigned to the Forensic Science Division on 1-2-72 – Promoted to D/Sgt. on 12/73 – Promoted to D/Lt. on 3/15/81 and retired as a D/Lt. on 2-29-92.

**POSITION:**   D/Lt. - Laboratory Specialist: Firearms/Tool Marks/Bomb Squad Unit Supervisor and the Crime Scene Assignment / Processing Supervisor for the Michigan State Police Northville Forensic Laboratory. This forensic laboratory provided services free of charge for well over 120 police agencies throughout Southeast Michigan. The Michigan State Police Northville Forensic Laboratory was one of the first A.S.C.L.A.D. Accredited laboratories, not only in Michigan but in the United States.

**DUTIES:**

* All the duties and responsibilities of an enlisted Michigan State Police Officer.
* Supervisor of the trained firearms staff and the responsibility for training new examiners and assisting current examiners;
* Research new methods of analysis both in the laboratory and at crime scenes;
* Laboratory analysis of all submitted firearms, fired bullets, fired cartridge cases and ammunition;
* Analysis of gunpowder patterns and gunshot residue cases;
* Determination of bullet entrance and exit holes, bullet trajectories and flight paths;
* Examination of weapons for operability, safety, functioning and alterations of mechanisms;
* Examination of air rifles for function and power;
* Blood spatter interpretation;
* Tool mark and physical match examinations;
* Develop and administer in-house proficiency testing for the firearms unit and the bomb squad;
* Serial number restorations;
* Formulating crime scene processing plans and directing crime scene crews comprised of both enlisted and civilian employees;
* Crime scene investigation and reconstruction;
* Crime scene photography and the instructing of laboratory personal in crime scene photography;
* Evidence collection and preservation in the laboratory, at crime scenes and at autopsy;
* Advise medical personnel and assist them at autopsies;
* Responsible for all bomb calls and explosive destruction Complaints received by the laboratory from over 120 police agencies in S.E. Michigan;
* Provide expert court testimony when requested;
* Administrative duties in the absence of the laboratory director.

**COURT TESTIMONY:**

Expert testimony has been accepted in Michigan Circuit Courts for the Counties of Wayne, Washtenaw, Oakland, Monroe, Livingston, Lenawee, Macomb, Allegan, Roscommon, Leelanau, Grand Traverse, Calhoun, Shiawassee, Chippewa, St. Clair,

Ottawa, Genesee and Kent Counties. Expert testimony has also been given in the District Courts for Wayne, Oakland, Washtenaw, Lenawee and Livingston Counties and the Probate Courts in Wayne, Oakland, Washtenaw and Monroe Counties. I have also testified in United States District Courts of Michigan, Oklahoma, Indiana, Pennsylvania, California, Alabama, Maryland. Florida and Ohio as well as the State Circuit Courts for Wisconsin, Illinois, Mississippi, Oklahoma, New York, Delaware, Maryland, Arizona and California. These testimonies exceed 400 occasions.

**DEPOSITION TESTIMONY:**  I have offered expert testimony at depositions on 87 occasions.

**EDUCATION:**

**1972 - 1974**  **BA - Madonna College, Livonia, Michigan**
Major: Social Science       Minor: Criminal Justice

**1965 - 1966**  **Michigan State University, E. Lansing, Michigan**
General Studies

**1963 - 1965**  **Delta College, Bay City, Michigan**
General Studies

**PROFESSIONAL ASSOCIATIONS:**
* Association of Firearm and Tool Mark Examiners - Life Member
* International Association of Bomb Technicians and Investigators – Life Member
*International Wound Ballistics Association through 2010
* International Association of Bloodstain Pattern Analysts through 2010
* Disaster Assistance and Recovery Team - Retired 2-29-92
* FBI Bomb Data Program - Retired 2-29-92
* Michigan State Police Command Officers Association
* Treasurer of the Echo Forest Home Owners Association from 2014 – 2021

**PROFESSIONAL TRAINING AND EXPERIENCE:**

**3-1-92 to Present**  Independent Firearms Examiner, Forensic Science Consultant and Crime Scene Reconstruction.

| | | |
|---|---|---|
| **9-18-66** | Enlisted - Michigan State Police | Trooper |
| **1-2-72 to** **2-29-92** | Michigan State Police Northville Forensic Laboratory | Firearms, Tool Marks Bombs and Explosives Unit |
| **3-15-81 to** **2-29-92** | D/Lt. Unit Supervisor | Firearms, Tool Marks Bombs and Explosive Unit. |
| **2-27-78 to** **3-9-78** | Smith and Wesson Firearms Springfield, Massachusetts | Armorer School |
| **2-89** | Sig/Sauer Firearms | Armorer School |
| **2-90** | American Academy of Forensic Science | 1 Week seminar/training in Cincinnati, Ohio |
| **6-89** | Glock Firearms | Armorer School |
| **8/89** | Michigan State Police – Conversion training on 9mm Sig/Sauer Model 226 semi-auto pistol | 40 hours course |
| **9-89** | Blood Spatter Interpretation | 3 Day Workshop |
| **10-97** | International Wound Ballistics Association | 2 Day Conference |
| **1-87** | Federal Bureau of Investigation Training Academy - Quantico, Virginia Bombs and Equipment | 1 Week School |
| **3-74** | Tours of various firearms, ammunition and explosive plants | Two Week Program |
| **8-73** | Hazardous Explosive Devices Course at the U.S. Army Redstone Arsenal - Huntsville, Alabama | Three Week Course on Improvised Explosive Devices |

**PROFESSIONAL TRAINING AND EXPERIENCE CONT:**

| | | |
|---|---|---|
| **Late 1980's** | Advanced explosives program given by BATF in Glenco, Georgia | Two-Week School |
| **1980's** | 3 A.F.T.E. training seminars | Firearms Identification Updates and training |
| **1972 – 1992** | Many classes in photography. They were instructed by Kodak representatives as well as local photography experts. | Several one-week schools |
| **3-91, 11-88 5-85, 1-82 10-77, 1-76** | Hazardous Explosive Devices Course at the U.S. Army Redstone Arsenal - Huntsville, Alabama | 6 - One Week Refresher Schools |
| **2-72 thru 2-92 & 1995** | Michigan State Police Bomb Squad training & explosive refresher courses. | Higgins Lake and other training sites |
| **1973 thru 1992** | Basic X-Ray training and interpretation at the Hazardous Devices School in Huntsville Alabama in 1973 and at all the subsequent refresher schools as well, including setting up the portable X-Ray's, intensifying screens and film, taking the X-Ray and reading the film to determine a course of action. X-Ray training, including fluoroscopy, continued throughout my remaining 19 years in the department, these skills being used at crime scenes, in the laboratory and at autopsies. | |
| **2-72 thru Present** | Many classes and seminars offered mostly through the Michigan State Police covering firearms training, crime scene processing, blood spatter analysis and investigative techniques which have not been noted in this C.V. | |
| **1995 – 2004** | Attended 6 – S.H.O.T. Shows (Shooting, Hunting, Outdoors and Technology) to remain current in the field of firearms, ammunition and technology. | |

Quality training does not always take place in an academic setting. Some of the most valuable training I have received, unfortunately, has come at the expense of the lives of others. I have worked on thousands of cases that were submitted to the laboratory for analysis, as well as participating in hundreds of crime scene investigations while employed by the Michigan State Police and I have continued to work on homicide investigations and crime scene reconstruction as a civilian examiner combining for over 50 years of work in the field. Each case that an examiner works on teaches that examiner. During the course of my career the following listed cases stand out as significant investigations:

* Inkster Police Shooting - July, 1987. Three police officers were murdered at the Bungalow Motel in Inkster, Michigan. I headed the crime scene investigation and subsequent examination of over 400 items of evidence. My Circuit Court testimony lasted five days.
* Crash of Northwest Flight 255 – August 1987 – resulting in the death of 156 people. As assistant coordinator of the crash site, my responsibilities were to assemble recovery teams for body and property removal, grid the site and facilitate the recovery/identification effort. This crash led to the formation of the Disaster Assistance Recovery Team (D.A.R.T.) of which I was the Vice-Chairman. I have also assisted in the investigation of two other major airplane accidents.
* Ecorse Police Officer Eddie Atkins – Prosecution for Homicide in 1974.
* Shooting death of Detroit Police Officer Freddie Jackson.
* Bombing death of Michael Vincenza.
* Shooting death of Ypsilanti Police Officer Douglas Downing.
* Shooting death of Leonard Bontekoe by a Ypsilanti Police Officer.
* Beating death of Dorothy Tyburski – her body was in a freezer for 2 years.
* Billy Hardesty Case.
* Shooting of Davern Riley by Detroit PD
* Shooting death of Michael Hill by Detroit PD
* Shooting death of Sharon Solomon near Flint Michigan – Homicide/Suicide?
* Shooting death of Mr. Timmerman in Allegan, Michigan
* Shooting death of 4 people at a furniture store in Mississippi – I was retained by the defense and subpoenaed by the Prosecution for at least 5 trials on the same evidence against the same defendant.
* The shooting death of banker David Widlak-

* The 2008 discovery of firearms errors at the Detroit Police Laboratory resulting in the closure of the Detroit Police Crime Laboratory and the eventual opening of a satellite Michigan State Police Forensic Laboratory in the city of Detroit.
* There are multiple other shooting cases that I have worked on both as an enlisted police officer as well as a civilian examiner which also could have been included in the above list of noteworthy cases.

## TEACHING EXPERIENCE:

| | | |
|---|---|---|
| **6/91, 2/92, 10/92**<br>**11/93, 1/95, 11/95**<br>**9/96, 3/97, 11/97**<br>**10/98, 10/99**<br>**10/00 & 3/02** | Schoolcraft College | 13 - two week<br>evidence collection<br>and preservation<br>classes |
| **1982 - 1984** | Detroit Edison Nuclear<br>Security Personnel | 7 - two-day classes<br>Firearms/Explosives |
| **1972 - 1992** | Michigan State Police | Many classes on<br>Firearms Identification<br>Bombs and Explosives<br>Evidence Collection |
| **1997** | Michigan State Police | 2 Basic Crime Scene<br>Photography Classes |
| **Many Classes**<br>**1972 - 1997** | Local Police Agencies | Firearms Identification<br>Bombs and Explosives<br>Evidence Collection |
| **1972 - 1999** | University of Michigan<br>University of Detroit<br>Wayne State University<br>Madonna University<br>Henry Ford Community College<br>Schoolcraft Community College<br>Washtenaw Community College<br>Mercy College | Guest lectures on<br>Firearms Identification,<br>Tool Marks, Bombs and<br>Explosives. Crime<br>Scene Analysis |

| | | |
|---|---|---|
| **1998 & 1999** | Michigan Defense Attorney's Association Seminar | Three presentations on utilizing a firearms/crime scene expert. |
| **2011** | Presentation to the 36th District Court Judges | Firearms Identification / Crime Scene Expert |

**2017**       I.A.B.T.I. training session at the Capital City Airport in Lansing, Michigan which included robot training and case reviews.

**2017**       Old case review with MSP Northville Explosive Unit covering several old laboratory cases involving death by explosives.

## PUBLICATIONS:

**1973 AFTE**       A unique .25 auto caliber jacketed hollow point bullet made by Winchester-Western for the J.J. Jovino Co. of New York.

**1998 AFTE**       FRANGIBLE BULLETS: A FIREARMS EXAMINERS NIGHTMARE.

2/16/2023

# DAVID E. BALASH

## TESTIMONIES & DEPOSITIONS   2017 - 2023

| 2/21/17 | Testify in Wilmington, Del | Keith Schueller v. Brett Cordrey, State of Delaware, Dept. of Public Safety-State Police C.A. No. N14C-05-201 EMD | Case # 947-15 |
|---|---|---|---|
| 3/22/17 | Testify in St. Charles, Ill | People v Whetstone | |
| 3/23/17 | Kane Co. Circuit Ct. | Case No. 14 CF 74 | Case # 969-16 |
| 3/30/17 | **Deposition Farmington Hills on Los Angeles, CA case** | **Amaya v COLA – VC062384** | Case # 938-14 |
| 4/3/17 | **Deposition Farmington Hills On Wisconsin Case** | **Estate of Michael Hawkins Explosive Device** | Case # 975-17 |
| 5/10 -11/17 | Testify in Norwalk, CA | Amaya v COLA – VC 062384 | Case # 938-14 |
| 6/20/17 | **Deposition Ann Arbor on Harrisburg, PA Case** | **Abraham J. Gregor v. Officer Scott Johnson No.1:14-CV-219-YK** | Case # 964-16 |
| 6/29/17 | **Deposition in Chicago** | **LaPorta v. City of Chicago, et al Case No. 14 CV 9665** | Case # 981-17 |
| 7/14/17 | **Deposition Detroit on California case** | **Estela Rodriguez and Abel Rodriguez v. County of Los Angeles and Deputies Andrew Alatorre and Sandy Galdamez** | Case # 980-17 |
| 10/13 & 16/2017 | Testify in Chicago, IL United States District Ct. | Michael LaPorta v. City of Chicago et al 14-CV-96765 | Case # 981-17 |
| 11/21/17 | Testify Macomb Co Circuit | State of Michigan v. Christopher Jones Case No. 2017-869-FC | Case # 984-17 |
| 05/09/18 | Testify Detroit Recorder's Ct. | People v Theionious Searcy COA # 293056 | Case # 989-18 |
| 6/20/18 | **Deposition Farmington Hills** | Desmond Ricks, et al v. David Pauch, et al Case No.-cv-12784 | Case # 982-17 |
| 7/10/18 | Testimony Wilmington, Del | Rogers v. Morgan et, al. | Case # 953-15 |
| 8/21/18 | **Deposition Los Angeles, CA** | Armando Villanueva et al v. State of California: Cleveland and Henderson | Case # 996-18 |
| 9/12/18 | **Deposition Novi on Shooting in Arizona** | Kimberly Kennedy, et al. v. Mohave Co., et al. United States District Court, Arizona, No. 17-CV-08206-SPL | Case # 994-18 |
| 10/24-25/2018 | Testify in Macomb County Circuit Court | People of State of Michigan v. Jeremiah Boshell No. 2017-3787-FC | Case # 993-18 |
| **10/31/18** | **Deposition Southfield** | Matthews v. City of Dearborn, et al. Case # 16-13763 | Case # 956-16 |
| 11/19/18 | **Deposition in Detroit** | Davontae Stanford v. City of Detroit Case No. 17-13062 | Case # 859-09 |

1

| | | |
|---|---|---|
| 12/20/18 | **Deposition in Detroit on**<br>**New Mexico shooting case** | Hermelinda Alvarado-Escobedo v.<br>United States of America et al. |
| | | Case # 983-17 |
| 1/29/19 | **Deposition in Farmington Hills**<br>**On Ohio Case** | Patricia Martin et al., v. Joshua Haas et al.<br>Case No. 3:17-cv-00160 |
| | | Case # 968-16 |
| 6/25/19 | Testimony in Alabama Federal<br>District Ct. Florence, Alabama | Estate of Shane Wadkins v Steven Moody<br>Case No. 3:17-CV-00406 AKK |
| | | Case # 973-16 |
| 10/2/19 | **Deposition in Chicago on**<br>**Minn case** | **Shooting of Matthew VanHofwegen**<br>**File No. 15PM 247** |
| | | Case # 997-18 |
| 10/29/19 | Testimony in Federal District Ct.<br>Michigan Eastern District | Shooting of Terrance Kellum |
| | | Case # 999-19 |
| 11/7/19 | Washtenaw County Circuit Ct | People V. Jacob Labelle<br>Case No. 18-596-FH |
| | | Case # 1006-19 |
| 10/23/20 | **Deposition (zoom at home)**<br>**Canton, Michigan** | **Peck et at v. County of Orange et al.**<br>**2:19-cv-04654 DSF – (AFMx)** |
| | | Case # 1016-20 |
| 03/10/21 | Testimony at a Police Trial Board<br>(Zoom) at Home | City of Chicago v. P.O. Patrick Kelly |
| | | Case #  981-17 |
| 06/21/21 | **Deposition (Zoom) for Chicago** | **Love et al. v. City of Chicago et al.**<br>**Case: 1:18-cv-02742** |
| | | Case # 1028-21 |
| 08/05/21 | Federal District Court<br>Phoenix Arizona | Kimberly Kennedy et al, v. Mohave Co.<br>So et al, Case # 3:17-CV-08206 SPL |
| | |  Case #  994-19 |
| 11/22/21 | **Deposition (Zoom) for San Jose** | **Dominguez v. San Jose Police Dept et al**<br>**Federal Court-Northern District of CA**<br>**Case No.: 5:18-cv-04826** |
| | | Case # 1032-21 |
| 07/15/22 | **Deposition (Zoom) for Chicago** | **LaShawnda Young, etc., vs. Ottis Watts**<br>**and the City of Chicago**<br>**Case No. 13 C 5651** |
| | | Case #  985-17 |
| 08/23/22 | Federal Court-Northern District<br>of CA, San Jose   ,CA | **Dominguez v. San Jose Police Dept et al**<br>**Federal Court-Northern District of CA**<br>**Case No.: 5:18-cv-04826** |
| | |  Case # 1032-21 |
| 11/04/22 | Saginaw Co Circuit Court | People v. Roderick Dewayne Barnes<br>Case No 21-047452-FC-2 |
| | | Case # 1044-22 |
| 12/16/22 | Kalamazoo Circuit Court | People v. Michael Thigpen<br>Lower Court No. 19-2082-FC |
| | | Case # 1041-22 |
| 02/12/23 | **Deposition in High Point N.C.** | |
| | | Case # 1043-22 |

**88  Depositions to date from 1992**
**133  Testimonies to date from 1992**

Respectfully submitted
David E. Balash

# DAVID E. BALASH

FIREARMS EXAMINER * FORENSIC SCIENCE CONSULTANT
41906 Echo Forest Ct. * Canton, Michigan 48188
Phone (734) 981-6788* Fax (734) 981-6459


FEE SCHEDULE


Examinations, meetings and Case Reviews    $ 325.00 per hour – 6 hour minimum


Court and Deposition Testimony $ 1,600 Minimum Charge  + $400 per hour or any part of an hour for testimony lasting more than 4 hours. Payment for depositions is due the day of the deposition.


$ 3,000 Charge for Court or Deposition outside of the State of Michigan. This includes all travel charges. For out of state Court or Deposition Testimony lasting beyond 4 hours an additional charge of $400 per/hour will be applied.

    Standby Court Time - $ 250 per/hour
    Travel (car) - $ 700.00 per half day (4 hours) + expenses
    Travel (plane)                    Pre paid Ticket + expenses and
                                              $ 700 per half day (4 hours) travel.
                                              $175 for each additional hour of travel


A $ 4,000.00 retainer, drawn from a Law Firm Account or a Certified Check,  is required prior to work starting on all new cases unless other arrangements have been made. Work hours are deducted from the retainer (6 hours minimum) and all unused portions of the retainer will be refunded within 3 business days of the request for reimbursement.


A retainer is not required on court appointed cases.


Airline tickets and partial expense money must be paid prior to travel.


I do not charge for normal telephone conversations. This applies whether I have been retained on the case or not.


                                              David E. Balash
                                              TIN 379-44-770


                                              2/14/2023