IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ADAM FRIED, ADMINISTRATOR, ) <br> ESTATE OF DESMOND FRANKLIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOSE GARCIA, ) <br> ) <br> Defendant. ) | Case No. 1:22-CV-0061 <br><br> JUDGE DAN AARON POLSTER <br><br> **<u>OPINION AND ORDER</u>** |

**I.  Introduction**

This matter comes before the Court on Defendant, Jose Garcia's, motion for summary judgment.  ECF Doc. 44.  Plaintiff Adam Fried, Administrator, Estate of Desmond Franklin, filed an opposition (ECF Doc. 47) and Defendant filed a reply.  ECF Doc. 48.  Because there are genuine disputes of material fact, the Court DENIES Defendant's motion for summary judgment, as is further explained below.

**II.  Procedural History**

Adam Fried, Administrator of the Estate of Desmond Franklin, filed a complaint in Cuyahoga County Court of Common Pleas on December 6, 2021.  ECF Doc. 1-1.  Jose Garcia is the only named defendant.  The complaint alleges that Jose Garcia was a "duly-appointed police officer employed by the City of Cleveland acting within the scope of his employment and under color of law."  ECF Doc. 1-1 at 3.  The Complaint sets forth the following claims:  1) State Law

Wrongful Death; 2) State Law Claim for Survivorship; 3) State Law Claim for Negligence – Reckless Conduct; 4) State Law Claim for Intentional Infliction of Emotional Distress; and 5) 42 U.S.C. § 1983 Claim for Unconstitutional Seizure.

Defendant removed the case to Federal Court on January 12, 2022. ECF Doc. 1. On January 31, 2024, Defendant moved for summary judgment. ECF Doc. 44. Plaintiff filed an opposition to the motion for summary judgment on March 1, 2024. ECF Doc. 47. Defendant filed a reply brief on March 15, 2024. ECF Doc 48. Because Defendant's briefs did not take a clear position on whether he was acting under color of law when he shot Franklin, the Court ordered him to explain his position on this issue. ECF Doc. 49. Thereafter, on March 22, 2024, Defendant filed a brief contending he was acting under color of law when he shot Desmond Franklin. ECF Doc. 52. This matter is now ripe for ruling.

### III. Statement of Facts

On April 9, 2020, Jose Garcia, an off-duty Cleveland police officer, was driving to work when he observed Devin Badley exit Desmond Franklin's car and take merchandise from the back of an unattended box truck. Garcia believed Badley was stealing, so he lowered his window and said, "that's not nice, put it back." ECF Doc. 44-4 at p. 86. Garcia then proceeded on his route to work thinking that his interaction with Franklin and Badley was over.

Badley reports a different version of this interaction. According to Badley, Garcia rolled down his window and said, "You a pussy." Franklin responded, "You a bitch." ECF Doc. 44-6 at p. 78. All parties agree that Garcia never identified himself as a police officer, and that Badley and Franklin therefore did not know that Garcia was a police officer. Garcia drove away, and Badley believed their interaction was over.

2

Unfortunately, the parties' interaction was not over. Back in their car, Franklin asked Badley to retrieve his "stick" (gun) from under the passenger floor mat. Franklin placed the gun under his right leg. ECF Doc. 44-6 at p. 90. He then drove to a Wendy's drive-through. According to Badley, Franklin never moved the gun from under his right leg. After leaving Wendy's, Franklin returned to the road and pulled up next to Garcia. Badley was unaware that they were next to Garcia until after Franklin was shot. ECF Doc. 44-6 at 91-92.

According to Garcia, Franklin pulled his car up parallel, and to the left, of Garcia's car when Garcia was stopped at a red light. When Garcia looked toward Franklin's car, he saw the barrel of Franklin's gun pointing at him. Garcia instantly reacted. ECF Doc. 44-4 at 108-111. He unholstered his city-issued police gun and shot several times out his driver's side window in the direction of Franklin's car. ECF Doc. 44-4 at 126, 139. One of the bullets hit Franklin in the temple, and this shot proved to be fatal. During the shooting, Garcia was holding his gun with his right hand. His car was moving forward but remained in first gear because he was using his right hand to shoot. ECF Doc. 44-4 at 137,157. Garcia did not notice Badley in the passenger seat of Franklin's car. ECF Doc. 44-4 at 162.

Badley, the passenger in Franklin's car, was looking straight ahead and did not see Franklin move the gun out from under his leg or point it in Garcia's direction. ECF Doc. 44-6 at 112. Presumably, if Franklin *had* been pointing the gun in Garcia's direction, Badley would have seen it. When Badley heard Garcia shooting, he ducked his head to the left on Franklin's shoulder. He next felt the warmth of Franklin's blood on him. ECF Doc. 44-6 at 99. According to Badley, both of Franklin's hands remained on the steering wheel during this time. *Id*. After Franklin was shot, his foot pressed down on the gas, moving his car forward until it crashed into a cemetery fence. ECF Doc. 44-6 at 99-100. Badley first attempted (unsuccessfully) to get help

3

for Franklin. He then returned to the car to stay with Franklin. According to Badley, Franklin was still alive for some time after being shot. However, after struggling for a little while, Franklin "moved his shoulder," and Badley knew "it was over with." ECF Doc. 44-6 at 107-108.

After Franklin's car crashed, Garcia called 911. When police arrived, he informed them that there was a gun in Franklin's car. Garcia assisted in having Badley removed from the vehicle and securing the scene. ECF Doc. 44-4 at 169-175. Police found a handgun lying on top of Franklin's feet on the driver's side of the car. Glass from the passenger window was lodged in the gun, which was also covered with Franklin's blood.

## IV. Standard of Review

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). As a result, "'[c]onclusory and unsupported allegations, rooted in speculation are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015), citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003); see also Fed. R. Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 –86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

4

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323 –24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

V.  **Law & Analysis**

   A.  **1983 Excessive Force Claim**

To prevail on his §1983 claim for excessive force, Plaintiff must prove three elements: 1) that Defendant acted under color of state law; 2) that Defendant deprived Plaintiff of his Fourth Amendment right to be free from use of excessive force; and 3) that, as a proximate result, Plaintiff suffered injury or damages. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir. 1994).

   1.  **Color of Law**

Plaintiff contends Garcia was acting under color of law. He points to the facts that Garcia was acting like a police officer when he confronted Badley and used a city-issued weapon when he shot Franklin. ECF Doc. 47 at 14. Plaintiff also cites the facts that Garcia took control of the scene after Franklin crashed and turned in his badge and gun when other police arrived. *Id.*

5

In his motion for summary judgment and reply brief, Garcia did not take a position on the color of law issue. He recited the law and stated the facts, but did not clearly take a position that he was or was not acting under color of law. However, after ordered by the Court, Defendant filed a brief "confirming" that he was acting as a police officer when he shot Franklin. ECF Doc. 52. Garcia argues that he "transitioned to a police officer and acted under color of law the moment he saw Franklin brandish his gun inside the Ford." ECF Doc. 52 at 3. Garcia also cites the facts that he used his city-issued gun and had his badge, even though he was off duty. *Id.*

Prior to Garcia filing his March 22, 2024 brief, the Court was carefully considering the facts of this case and the color of law issue. Some of the facts suggest that Garcia was acting as a private citizen when the events took place. For example, Garcia was driving his personal car and was not wearing his uniform. ECF Doc. 44-4 at 57-58. Nor did he identify himself as a police officer until after Franklin was shot. ECF Doc. 44-4 at 176. When there are genuine issues of material fact, the issue of whether a defendant was acting as a police officer or a private citizen may be a question for a jury. *See, e.g., Barkovic v. Hogan,* 505 F. App'x. 496 (6th Cir. 2012); *Chapman v. Higbee Co.,* 319 F.3d 825 (6th Cir. 2003). But here, both parties take the position that Garcia was acting as a police officer when he shot Franklin. Thus, even if the facts could support a different conclusion, there is no question for a jury to resolve because both sides take the position that Garcia was acting under color of law.

### 2. Excessive Force/Qualified Immunity

The next element of Plaintiff's § 1983 claim is the violation of a Constitutional right. The broad right at issue in this case is the Fourth Amendment protection against excessive force. *See Colson v. City of Alcoa*, 37 F.4th 1182, 1187 (6th Cir. 2022). Garcia argues that, as a police officer, he is entitled to qualified immunity. An officer is entitled to qualified immunity unless

6

he violated a clearly established statutory or constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231-32, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). In evaluating Fourth Amendment excessive-force claims, courts apply an "objective reasonableness" standard. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Whether an official's use of force is objectively reasonable is normally a "pure question of law." *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009), quoting *Scott v. Harris,* 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The first step in a qualified immunity analysis is to determine whether the facts, taken in a light most favorable to Plaintiff, show that Garcia's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The Fourth Amendment protects law abiding citizens from being intentionally shot by police officers. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). However, police officers are permitted to use force to defend themselves (or others) if they believe that an individual poses an immediate threat. Courts must balance the intrusion on the individual's Fourth Amendment interests with the interests of the government. *Graham*, 490 U.S. at 396. Considerations for this fact-intensive inquiry include whether the suspect poses an immediate threat to others and whether he is attempting to evade arrest or resist officers. *Id*.

Here, the Court cannot decide as a matter of law whether Garcia violated Franklin's constitutional right because the parties do not agree on what happened. The testimony from the two primary witnesses – Garcia and Badley – cannot be reconciled. If Garcia saw the barrel of a gun pointed at him, the force he used was not excessive. "If the suspect threatens the officer with a weapon, that risk has been established." *Evans v. United States,* 2017 U.S. Dist. LEXIS 48480 (E.D. Tenn., March 31, 2017); *See also, Brosseau v. Haugen,* 543 U.S. 194, 197-198, 125

7

S.Ct. 596, 160 L.Ed.2d 583 (2004); *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003).  Even if Garcia had only seen Franklin reaching for a gun, his conduct would most likely have been reasonable.  *See Cooper v. City of Rockford*, 2010 U.S. Dist. LEXIS 79539 at *19 (N.D. Ill. August 3, 2010) ("The law does not require that a police officer wait until a gun is pointed directly at him to defend himself.")

On the other hand, if Franklin's gun remained under his thigh, Garcia would not have seen it, and the force he used *was* excessive.  Here, the question of qualified immunity presents a very close call because the Court has serious concerns about Badley's testimony.  Badley stated that he was looking forward at all times and did not see whether Franklin pointed his gun at Garcia.  ECF Doc. 44-6 at 99-100, 112.  Badley went so far as to say he wasn't focused on the gun at all.  *Id*.  Garcia argues that Badley hasn't really contradicted him because, if Badley was looking straight ahead and didn't see Franklin's gun, he can't say for sure that it wasn't pointed at Garcia.  The problem with this argument is that, if Franklin had been pointing his gun at Garcia, Badley (the passenger in Franklin's vehicle) would have seen it.  Franklin was driving a small car, and had Franklin held the gun in his right hand and pointed it toward Franklin, Badley would have seen at least part of the gun, even if he was just looking straight ahead and not at Franklin.  Badley testified that the gun remained under Franklin's thigh.  ECF Doc. 44-6 at 112.  Badley also testified that both of Franklin's hands were on the steering wheel *after* Franklin was shot (ECF Doc. 44-6 at 99), which would have been impossible had Franklin been holding a gun in his right hand and pointing it at Garcia.  Badley's testimony therefore *does* contradict Garcia's.

It is also hard to square Badley's testimony that Franklin's gun remained under his thigh with the physical evidence.  How was Franklin's gun peppered with glass from the passenger

8

side window if it was under his thigh? And how did the gun end up on Franklin's feet after the accident? These details seem inconsistent with Badley's testimony that the gun remained under Franklin's thigh. However, when Defendant's expert was questioned about the location of Franklin's gun during the shooting, he said he could not determine where Franklin's gun had been during the event.

> Q. Based upon your experience in shooting scene reconstruction, can you make any conclusions about where the gun was in Desmond Franklin's car prior to its – where it was finally discovered?
>
> A. No, no, I can't position the gun in three dimensional space in the moments before and through the shooting, how it may have moved during the course of the delivery of shots or its potential movement after the collision and car wreck at the end. So I can't position Franklin's pistol in space prior to where it ended up at his feet.

ECF Doc. 44-10 at 126.

Ultimately, it is up to the jury, not the Court, to weigh the credibility of Badley and Garcia. If the jury credits Badley's testimony that Franklin's gun remained under his thigh, then Garcia could not have seen the gun before he fired shots in Franklin's direction. A jury will need to weigh the credibility of the two witnesses and decide whether Garcia was reasonably acting in self-defense or whether he used excessive force.

If the jury determines there was no constitutional violation, there is no need for further inquiry. Garcia is entitled to qualified immunity. *Saucier,* 533 U.S. at 200-2011. But granting qualified immunity is inappropriate when there is a genuine issue of material fact as to whether or not the force was excessive. *Green v. Taylor,* 2006 U.S. Dist. LEXIS 103827 (N.D. Ohio 2006), *citing Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).

> When "the legal question . . . is completely dependent upon which view of the facts is accepted by the jury," the District Court cannot grant a defendant police officer immunity from a deadly force claim. *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989). This is because the reasonableness of the use of

9

> force is the linchpin of the case. If the jury determines the officer shot the suspect without a reasonable belief that he posed a significant threat of death or serious physical injury to the officer or others, then the officer's actions were legally unreasonable under the Fourth Amendment. *Id.* at 216. On the other hand, if the jury believes the officer's version of the facts and finds the officer's conduct was reasonable, then he will be entitled to qualified immunity. *Id.* Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.

*Green,* 2006 U.S. Dist. LEXIS at *41-42, citing *Sova*, 142 F.3d at 903.

Here, the Court cannot determine whether Garcia is entitled to qualified immunity due to the disputed facts. If a jury believes Garcia's version of the facts, then his conduct was not unreasonable and was not a constitutional violation. But if they believe Badley, Garcia used excessive force. It is clearly established that using deadly force against a person who does not pose an immediate risk of serious physical harm is unreasonable and a violation of constitutional rights. *Tennessee v. Garner,* 471 U.S. 1, 11, 12, 105 S.Ct. 1694, 85 L.Ed.2d 1, 1985 U.S. LEXIS 195 (1985); *Graham,* 490 U.S. at 394. Because there are genuine issues of material fact, the Court must deny summary judgment on Plaintiff's §1983 claim.

  **B.**  **Plaintiff's State Law Claims**

    **1.**  **Wrongful Death**

Plaintiff's primary state law claim is one for wrongful death under Ohio Revised Code § 2125.02. This statute authorizes a personal representative to sue for specific enumerated compensatory damages following a wrongful death on behalf of a surviving spouse, child or next of kin. *See* O.R.C. § 2125.02. But as with the §1983 claim, Garcia may be entitled to immunity on the wrongful death claim. O.R.C. § 2744,03(A)(6)(b) provides immunity for employees of the city (such as Garcia) unless his acts or omissions were with "malicious purpose, in bad faith, or in a wanton or reckless manner." *See Ewolski v. City of Brunswick,* 287 F.3d 492, 517 (6th Cir. 2002). Plaintiff alleges that Garcia's conduct was reckless and, if the jury believes Badley's

10

version of the events, it probably was. However, as already noted, there are genuine issues of material fact which cannot be decided by the Court. A jury must decide whether Garcia's conduct was reckless and/or whether he is entitled to immunity from Plaintiff's wrongful death claim. Because the facts are disputed, summary judgment cannot be granted on this claim.

## 2. Survivorship Claim

Defendant also argues he is entitled to summary judgment on Plaintiff's "survivorship" claim because Plaintiff cannot establish that Franklin experienced pain and suffering prior to his death. Plaintiff's survivorship claim is not a claim *per se*, but rather is a type of claim that survives a person's death. O.R.C. § 2305.21 lists causes of action which survive death, and one such claim is for "injuries to the person." Here, Plaintiff's survivorship claim is based on the short period of conscious pain Franklin may have suffered from the time when he was shot until he died.

Plaintiff's conscious pain and suffering argument is supported by Badley's testimony that Franklin was alive for some time until he moved his shoulder – and Badley knew "it was over with." ECF Doc. 44-6 at 107-108. If a jury determines that Garcia violated Franklin's constitutional rights and/or recklessly caused his death, Franklin's estate may be entitled to damages for the pain and suffering Franklin experienced immediately before he died. As with Plaintiff's other claims, this claim depends on a jury believing Mr. Badley's testimony. If the jury believes that Franklin was alive and suffering for some amount of time before succumbing to the gunshot wound to his head, his estate may be entitled to damages for the injuries to his person.

While the Court has its own doubts about Mr. Badley's testimony, it cannot say that a reasonable jury would necessarily reject it. Because there are genuine issues of material fact on

11

whether Franklin experienced conscious pain and suffering after being shot, summary judgment is inappropriate on Plaintiff's "survivorship" claim.

### 3. Statute of Limitations & Negligence

Defendant contends that Plaintiff's state law claims for survivorship, negligence and intentional infliction of emotional distress are barred by the one year statute of limitations because these claims are actually claims sounding in assault and battery. ECF Doc. 44 at 17. Plaintiff argues that these claims are not for assault and battery and are governed by the two-year statute of limitations in O.R.C. § 2305.10. The Court agrees that Plaintiff's claims are not simply assault and battery claims and should not be construed as such. Plaintiff's state claims are related to the bodily injury and death of Desmond Franklin. Claims for bodily injury or wrongful death are subject to a *two-year* statute of limitations. *Id*. Defendant is not entitled to summary judgment by re-construing Plaintiff's claims as assault and battery claims and then applying a one year statute of limitations.

The Court does note that, in contesting Defendant's statute of limitations argument, Plaintiff acknowledges that he will need to prove more than mere negligence to recover damages from Garcia who would otherwise be entitled to immunity under O.R.C. § 2744.03. The facts of this case, even when construed in Plaintiff's favor, do not support a claim for simple negligence against Garcia if he was acting as a police officer for the city. Plaintiff's third claim for relief is entitled "State Law Claim for Negligence – Reckless Conduct." In his opposition, Plaintiff recharacterizes the claim as one for "breach of duty" and acknowledges that he will need to prove reckless conduct, not negligence alone. If Plaintiff's Third Claim for Relief were a simple negligence claim, Defendant would be entitled to summary judgment on it. However, because Plaintiff has also alleged that Defendant acted in a willful, wanton, reckless, intentional or

12

malicious manner, Defendant is not entitled to summary judgment on the third claim in Plaintiff's complaint.

### 4. O.R.C. § 2307.60(B) as a Bar to Plaintiff's Claims

Defendant next argues that Plaintiff's state law claims are barred because Franklin was committing a felony when he was shot. Ohio Revised Code § 2307.60(B)(2) precludes recovery to a person's legal representative if the person was engaged in a felony that was the proximate cause of the injury or loss. Defendant argues that Franklin was not permitted to have a gun, and his possession of it constituted a felony. While Defendant may be correct that Franklin's commission of a crime bars his recovery, this argument is (again) dependent on which version of the facts is true. If a jury believes Badley and finds that Franklin did not display his gun to Garcia, Franklin's commission of a felony (possession under disability) will not have been a proximate cause of Franklin's injuries. As with Defendant's other defenses, application of O.R.C. § 2307.60(B)(2) is dependent on the underlying facts. Because there are genuine issues of material fact, the Court cannot grant summary judgment on this basis.

### 5. Self-Defense

Defendant also argues that he was entitled to use deadly force in self-defense. This argument is based on the same facts as Garcia's argument for qualified immunity. If the jury believes Garcia's version of events, it won't even be necessary for him to argue that he acted in self-defense because his conduct was objectively reasonable. He will be entitled to qualified immunity. But at this stage, Defendant is not entitled to summary judgment based on his argument of self-defense.

### 6. Punitive Damages

Finally, Defendant argues that, if Plaintiff's wrongful death claim is the only claim surviving summary judgment, Plaintiff's claim for punitive damages must be summarily denied. ECF Doc. 44 at 23. Because the Court has not granted summary judgment on any of Plaintiff's claims, it is not necessary to further consider Defendant's argument related to punitive damages. Because genuine issues of material fact preclude summary judgment on Plaintiff's claims, the Court must also deny summary judgment on Plaintiff's demand for punitive damages.

## VI. Conclusion

Because there are two different versions of the events that took place leading to Desmond Franklin's death on April 9, 2020, the Court cannot grant summary judgment to Defendant on Plaintiff's claims. To the extent that Plaintiff has attempted to state a simple negligence claim, Defendant is entitled to summary judgment. Otherwise, the Court DENIES summary judgment on all of Plaintiff's claims.

IT IS SO ORDERED.

Dated: April 3, 2024

*s/Dan Aaron Polster*
United States District Judge