**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Adam Fried, Administrator of the Estate of Desmond Franklin,** | ) )  | **Case No. 1:22-CV-00061** |
| | ) | |
| | ) | **Judge Dan Aaron Polster** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **DEFENDANT'S MOTION *IN LIMINE*** |
| | ) | **TO LIMIT TESTIMONY OF DAVID** |
| **Jose Garcia,** | ) | **BALASH** |
| | ) | |
| **Defendant.** | ) | |

I.    **INTRODUCTION:**

This case arises from the death of Desmond Franklin who threatened to shoot a plain-clothed off-duty police officer, chased him down the street in his car, and brandished a gun as soon as he caught up to the officer. The off-duty officer, Jose Garcia, shot and killed Franklin in self-defense. Plaintiff filed a 42 U.S.C. §1983 excessive force claim, state-law survivorship claims, and a wrongful death action. Plaintiff retained David Balash as a forensic firearms examiner and evidence collection expert. But, several of Balash's opinions either (a) go beyond his field of expertise, (b) are irrelevant, and/or (c) are not based on any valid, scientific basis.

II.    **STATEMENT OF FACTS:**

Plaintiff's expert, David Balash, identifies himself as a "firearms examiner" and "forensic science consultant." (Doc#: 47-2, PageID# 1034). Balash relies upon his experience as a firearms examiner to render opinions in the case:

Q.    … what professional training and experience do you feel helped you
         prepare your report and reach the opinions in this case?

A.    The fact that I am a firearms examiner, worked on hundreds if not
         thousands of crime scenes, mostly involving shootings, bombs and

> explosives, etc. throughout a twenty-five year career with the Michigan State Police … I have a great deal of experience on firearms trajectory analysis, blood splatter analysis, and examining evidence in that regard.…

(Doc# 47-3, PageID # 1085-1086).

Balash has taught seminars on the collection, preservation of evidence at crime scenes, the submission of evidence to laboratories, firearms, crime scenes, bombs, and explosives. (Doc #: 47-3, Page ID #: 1087-1088). Balash describes the scope of his consulting work as follows:

> Q.    What's the scope of work that you currently perform doing business as David E. Balash?
>
> A.    Anything that I'm qualified to look at. In other words, firearms, crime scene reconstruction, bombs and explosives, tool marks, blood splatter analysis …

(Doc #: 47-3, Page ID #: 1091-1092).

Balash's opinions were formulated upon the materials he reviewed in the file. (Doc #: 47-43, Page ID #: 1072-1073). The materials that he reviewed basically consist of the City of Cleveland's, the County's, and the Attorney General's investigation materials of the shooting incident, and depositions of eyewitness Devin Badley and Defendant Jose Garcia. (See "materials reviewed" at Doc #: 47-2, Page ID #: 1034).

Balash's opinions in this case are based purely on his "experience and expertise in the area, and training to do these types of examinations." (Balash Depo., Doc #: 47-3, Page ID #: 1069). Balash did not look at or rely upon any industry literature, publications, studies, authorities, or any type of outside data in rendering his opinion. (Doc #: 47-3, Page ID #: 1069). He does not have a degree or any formal training in human biomechanics. (Doc #: 47-3, Page ID #: 1144). And he did not inspect the scene where the shooting incident occurred or directly review any physical evidence in this case. (Doc #: 47-3, Page ID #: 1083-1084).

III.    **LAW AND ARGUMENT**:

**A.  Legal Standard Regarding Expert Witnesses**

As the Supreme Court explained in *Daubert*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that the "reasoning or methodology underlying [the expert's] testimony is scientifically valid." *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that experts are **qualified**, and that their testimony be both **relevant** and **reliable**. *In re Flint Water Cases, No. 16-10444, 2024 WL 21786, at *2 (E.D.Mich. Jan. 2, 2024)*, citing Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). "[U]nder *Daubert* and its progeny, a party proffering expert testimony must show by a `preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000), citing *Daubert*, at 592 n. 10, 113 S.Ct. 2786. "*Daubert* and its progeny make clear that `[p]roposed [expert] testimony must be supported by appropriate validation.'" *Id*., citing *Daubert,* 509 U.S. at 591.

**B**.  **Balash's Opinions Regarding The Quality Of Law Enforcement Agency Investigations Are Irrelevant**

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is" inadmissible. Fed. R. Evid. 402. But even if relevant, a court must still mandatorily exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403. Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); see also *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002).

The Plaintiff filed this case ***solely*** against off-duty police Officer Jose Garcia. (See Plaintiff's Complaint at Doc #: 1-1, Page ID #: 1-12). The only issue in this case is whether Officer Garcia acted in self-defense. Officer Garcia played no role in the various law enforcement investigations into this shooting.

Neither the City of Cleveland, the County Sheriff, nor the Attorney General are parties to this case – and Plaintiff alleges no claims against any law enforcement agency. *Id*. In fact, Balash admitted that the Plaintiff did not ask him to render any opinions regarding the quality of the investigation conducted by the various law enforcement agencies:

Q:      …Were you asked to render opinions relating to the [law enforcement agencies] investigation:?

A:      No, just part of what I saw.  They didn't ask me to do this, no.

(Doc #: 47-3, Page ID #: 1115).

Balash's criticism of the quality or thoroughness of the law enforcement investigations into this shooting is irrelevant to the question of whether Officer Garcia acted in self-defense. That is, criticism of the law enforcement agencies has no probative value on the question of whether Garcia acted in self-defense. To the contrary, allowing Balash to opine on the quality of law enforcement investigation would be extremely prejudicial to Officer Garcia because it would confuse the jury and suggest that somehow Garcia was involved in a conspiracy to influence or taint the investigation of the shooting. Since the quality of the law enforcement investigation into the shooting is irrelevant and prejudicial to Officer Garcia, Balash should not be permitted to

4

comment or render any opinion on the quality of the investigation conducted by the various law enforcement agencies.

C.   **Balash Is Not Qualified To Render Accident Reconstruction, Bio-Mechanic And / Or Medical Opinions**

The party offering an expert's testimony has the obligation to prove the expert's qualifications by a preponderance of the evidence. *Sigler v. Am. Honda Motor Co., 532 F.3d 469, 478 (6th Cir. 2008)*. Courts do not consider "the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994)*. A trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony. *Smelser v Norfolk S. Ry. Co.*, 105 F.3d 299, 303-304 (6th Cir. 1997).

The Sixth Circuit offers guidance on evaluating an expert's qualification by outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 527 (6th Cir. 2012)*, citing *Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 177 (6th Cir. 2009)*. These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *United States v. Burnley*, No. 1:21-CR-785, 2023 WL 3004435, at *8 (N.D.Ohio Apr. 19, 2023), citing *Newell* at 527.  In addition, if an expert's testimony was prepared solely for litigation, this may also be grounds for exclusion. *Id*.; see also *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007) ("This Court has recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution."); *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 Fed.Appx. 479, 484 (6th Cir.2002) (noting that the prepared-solely-for-litigation factor is often assessed in addition to those

specifically enumerated in *Daubert*);  *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398,

408 (6th Cir.2006) ("We have been suspicious of methodologies created for the purpose of

litigation.").

### 1. Balash Is Not Qualified To Opine On How Franklin's Body And/Or The Gun Allegedly Under His Leg Moved When His Vehicle Crashed.

In this case, Balash claims to be a forensic expert in firearms and evidence preservation.

This may qualify Balash to render opinions regarding the functional dynamics of a firearm

and/or the forensic analysis of bullet trajectory at a particular scene.  But he admittedly is not an

accident reconstruction expert or bio-mechanic expert. (Doc #: 47-3, Page ID #: 1144).

Even though he is not an accident reconstruction or bio-mechanic expert, he seeks to

opine about the dynamic movement of Franklin's body and the movement of the gun allegedly

under Franklin's leg when (a) his vehicle crashed through a fence and collided with a tree, and

(b) his air bag deployed and deflated:

> … I said in my report that the evidence was consistent with the individual stating the weapon was under his leg at that point in time. ***As he struck various objects, the airbag went off. Then once the airbag went off, probably when he struck the fence, he then went on to strike the tree. The fact that the airbag had already deflated, which threw him into the windshield, and shattered the windshield from the inside, lifting him off the seat,*** I said that was consistent with the gun being found on the floor of the driver's side. [emphasis added].

Doc#47-3, PageID# 1141.

Balash's expertise as an alleged forensic firearm examiner and shooting scene examiner

do ***not*** qualify him to reconstruct or render opinions regarding the dynamic movement of

Franklin's body and/or the gun allegedly under his leg when his vehicle crashed through the

fence, struck a tree, and the airbag deployed. Indeed, Balash's inexperience in these areas is

6

demonstrated by the fact that his opinions on these topics are absolutely void of any scientific analysis. That is, he makes no analysis of weight, velocity, speed, laws of physics and/or any scientific calculation or testing underlying his speculation about how Franklin's body and/or the gun moved during the collision. Rather, his opinions are unsubstantiated, speculative and rendered solely for purposes of this litigation. Therefore, he is not qualified to render these opinions.

### 2. Balash Is Not Qualified To Opine On Franklin's "Muscular Response" When He Was Shot.

In this case, the gun at issue was found on the floor on Franklin's (i.e. the driver's) side of his vehicle with blood on it. Based upon the location and shape of the blood splatter, on the gun, Balash opines that blood dropped straight down on top of the gun. This opinion may be well within Balash's area of expertise.

But Balash then goes beyond his expertise and opines that:

> Mr. Franklin had a devastating head injury *that would have ceased any muscular response [over the gun] from him.* If he were pointing it, it would have been out over the passenger side of his vehicle. Therefore, when he would have been shot, the gun should have been on the passenger side.

(Emphasis added), Doc #: 47-3, Page ID #: 1139.

Balash is not a bio-mechanic, a neurologist, physiologist or any type of medical expert. He has no degree in forensic pathology or any formal medical training. Doc# 47-3, PageID# 1097. He is not qualified to render opinions regarding the neurologic and muscular control or response of the human body upon being shot. Again, Balash's lack of experience in this area is demonstrated by the lack of any scientific data, tests, or analysis supporting this opinion. Thus, he is not qualified to opine on Franklin's "muscular" response upon being shot or where / when the gun would have fallen from his hand upon being shot.

### D. Balash's Opinions Are Unreliable

Even if an expert is qualified and his/her opinions are relevant, the expert's opinions are still not admissible unless they are reliable. Rule 702 requires a proffered expert to testify to "scientific, technical or other specialized" knowledge. In *Daubert*, the Supreme Court held that Rule 702 places a special obligation on the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; *see also Kumho Tire, Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The test for admissibility of expert testimony is a "flexible" one focused on the "principles and methodology" of the expert. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-595, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The Supreme Court has set forth the following non-exhaustive list of factors for trial courts to use in assessing the reliability of scientific expert testimony: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94; *Avery Dennison Corp. v. Four Pillars Enterprise Co.,* 45 Fed. Appx. 479, 483 (6th Cir. Sept. 3, 2002). The trial court's overall task is to ensure that a testifying expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Blevins v. Kirk,* No. 18-5369, 2019 WL 5151310, at *2 (6th Cir. May 22, 2019).

A statement of an opinion's bases and reasons cannot merely be "the *ipse dixit* of the expert" from experience. *United States v. Mrabet*, No. 23-CR-69 (JSR), 2023 WL 8179685, at *2

8

(S.D.N.Y. Nov. 27, 2023), citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Courts must do more than "simply take 'the expert's word for it" when determining whether to admit expert testimony. *Cook v. Erie Ins. Co.*, 478 F. Supp. 3d 658, 662 (S.D. Ohio 2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005)). Rather, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006).

### 1. Balash's Opinions On (a) How Franklin's Body And/Or The Gun Allegedly Under His Leg Moved When His Vehicle Crashed, and (b) Franklin's "Muscular Response" When He Was Shot Are Unreliable.

As mentioned above, Balash is not qualified to render opinions regarding how Franklin's body and the gun under his leg moved when his vehicle crashed, or about Franklin's neurological and "muscular response" when he was shot.  Aside from Balash not being qualified, his opinions on these issues lack any scientific analysis or bases. His opinions cannot be tested and are unsupported by any scientific, peer reviewed data. Rather, he expects a jury to believe these opinions because he says so, but this is an insufficient foundation for an expert to render an opinion at trial.

### 2. Balash's Opinion That Officer Garcia Could Not Have Quickly Drawn His Gun While Seated In His Car Is Unreliable.

In this case, Balash opines that Officer Garcia's testimony about how he drew and fired his weapon did not match the testimony and interviews in this case. (Doc #: 47-3, Page ID #: 1133-1134). But the only basis for this opinion it that Balash's doesn't believe Garcia:

> …Stop and consider he's in a Honda. It's got bucket seats, I would assume, and I make the word assume, I understand that, wearing a seatbelt in compliance with the law. He has a heavy jacket on. You

are telling me that within a half a second he drew a gun from that position? I find that unbelievable.

(Doc #: 47-3, Page ID #: 1134). Balash also states that "I find it ludicrous to believe that [Garcia] would tuck a jacket behind a firearm when you are off duty, driving into your police department. I actually find it ludicrous." *Id*. at Page ID #: 1129-1130. Based purely on his disbelief, Balash opines that Garcia's weapon must have been "already unholstered and either on his lap or in his hand when he decided to shoot." (Doc #: 47-2, Page ID #: 1048).

However, Balash's opinion is not based upon any scientific study, data, literature or test regarding reaction times or data on how quickly a police officer can draw a weapon in a car – let alone any particular evidence pertaining directly to *Officer Garcia* drawing a weapon in *his* car. Nor does Balash conduct any scientific calculation or analysis establishing the times and distances for a reasonable officer to draw a weapon while seated in a car like the one Officer Garcia was driving. Instead, Balash contends that a jury should simply take his word that Officer Garcia's testimony is not credible. This type of opinion (challenging Garcia's credibility simply because Balash says so) is exactly the type of unfounded and un-scientific opinion that the United States Supreme Court prohibits under *Daubert* and *Kumho Tire* cases. Expert witnesses "may not testify about the credibility of other witnesses" because "[i]t is the province of the jury to assess the credibility of witnesses." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019); *accord Smith v. Jones*, 721 F. App'x 419, 423 (6th Cir. 2018); *Esch v. County of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017); *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).

Plaintiff's counsel is free to cross-examine Officer Garcia on the facts that he was sitting in his car, wearing a coat, and wearing a seatbelt at the time he drew his gun. But absent any scientific evidence that it was "impossible" for Garcia to quickly draw his gun while seated in his

10

car, Plaintiff cannot falsely bolster this notion by soliciting un-scientific opinion testimony from an expert.

Respectfully submitted,

/s/ Kenneth A. Calderone
Kenneth A. Calderone (0046860)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324
Facsimile:  (330) 670-7440
Email:  _kcalderone@hcplaw.net_


/s/  Thomas J. Cabral
Thomas J. Cabral (0033041)
Gallagher Sharp, LLP
121 Superior Avenue, 7th Floor
Cleveland, OH  44114
Telephone:  (216) 522-1172
Facsimile:  (216) 241-1608
Email:  _tcabral@gallaghersharp.com_
_Attorneys for Defendant_

HCP #1332322

11