# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **ADAM FRIED,** Administrator of the Estate of **DESMOND FRANKLIN,** | Case No. 1:22-CV-00061 |
| Plaintiff, | **JUDGE DAN AARON POLSTER** |
| v. | |
| **JOSE GARCIA,** | |
| Defendant. | |

**PLAINTIFF'S COMBINED MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE**

Plaintiff files these Motions *in Limine* pursuant to the Court's Trial Order (ECF No. 58) and asks the Court to exclude at trial all evidence, argument, or innuendo in the below-listed categories. Evidence in each of these categories is substantially more prejudicial than probative and is otherwise inadmissible under the Federal Rules of Evidence. The reasons supporting Plaintiff's Combined Motions are more fully set forth in the briefing below.

Respectfully Submitted:

*/s/ Elizabeth Bonham*
FG + G
Terry Gilbert (0021948)
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
Elizabeth Bonham (0093733)
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
terry@FGGfirm.com
marcus@FGGfirm.com
elizabeth@FGGfirm.com

*Counsel for Plaintiffs*

1

## SUMMARY OF PLAINTIFFS MOTIONS *IN LIMINE*

I.    The Court should exclude any prior convictions, indictments, or periods of incarceration of any witness or of Desmond Franklin, including any evidence that Desmond possessed a weapon under disability during the shooting. ........................................................................... 3

II.   The Court should exclude references to whether Desmond Franklin was going to buy weed on the day of the shooting................................................................................................ 6

III.  The Court should exclude the testimony of third-party witness Jonathan Schubert.......... 7

IV.   The Court should exclude other agency determinations that Garcia's shooting was reasonable, non-criminal, or within policy............................................................................. 10

V.    The Court should exclude references to the general challenges or dangers of police work. 11

VI.   The Court should exclude evidence of commendations, awards, and military history from any police officers who may testify........................................................................................... 11

VII.   The Court should exclude evidence or argument as to Desmond Franklin's financial status, including his source(s) of income or former incarceration. ........................................... 12

VIII.   The Court should exclude all references to Garcia's or the City's ability to pay a verdict, including references to any asserted taxpayer burden or to Garcia's or the City's inability to pay or poverty. ........................................................................................................ 13

## MEMORANDUM IN SUPPORT

Motions *in limine* allow the court to rule on evidentiary issues before trial to avoid delay and help the parties focus their preparation on issues that the jury will consider. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." (citations omitted.) Courts should exclude evidence on a motion *in limine* when the evidence is clearly inadmissible. *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Applying these principles, the Court should exclude the below-discussed evidence.

I.      **The Court should exclude any prior convictions, indictments, or periods of incarceration of any witness and of Desmond Franklin, including any evidence that Desmond possessed a weapon under disability during the shooting.**

Garcia may seek to introduce evidence of Desmond's prior criminal history, including that on the day of the shooting Desmond was under disability from possessing his firearm. The Court should exclude all such evidence. The Court should also exclude all criminal background evidence as to all of Plaintiff's witnesses including Devin Badley and Desmond's relatives.

Under Federal Rules of Evidence 608 and 609, prior convictions are inadmissible other than to impeach a witness for truth-telling. Even for this purpose, courts should only admit prior convictions for crimes of dishonesty or recent felonies that are more probative than prejudicial. *Id.* Juvenile convictions are not admissible at all in a civil case. Fed. R. Evid. 609(d). Similarly, under Rule 404(b), propensity evidence is inadmissible and prior "bad" acts are only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Parading prior convictions or evidence of other "bad" acts before the jury when these are unrelated to any fact at issue is not allowed.

Here, none of Desmond's or any of Plaintiff's witnesses' prior convictions or alleged

3

criminal conduct is admissible for any proper purpose under Rules 608 or 609 nor any 404(b) exception. Moreover, such evidence lacks any probative value (Fed. R. Evid. 402) and would be prejudicial and inflammatory (Fed. R. Evid. 403).

As to Desmond, he has no criminal history that is admissible for any purpose here. He has a nearly 10-year-old weapons under disability case arising out of a juvenile conviction. This renders it inadmissible and even if it did not, the crime does not involve dishonesty or false statements, *see* Rule 609(A)(2), and as is not probative of any fact at issue (let alone of "substantial" value, *see* Rule 609(A)(1) and (B)(1)). It could not be probative, because Garcia was not aware of any of Desmond's prior criminal history at the time of the shooting, so it cannot weigh into the reasonableness analysis under *Graham*. Desmond's prior gun case is also not admissible for any other purpose, including any Rule 404(b) exception. On the other hand, evidence of a past unrelated gun case would create "unfair prejudice ... [by] suggesting to the jury that [Desmond was] an evil [person] who does not deserve" relief. *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (citation omitted). Evidence of a gun crime that Desmond was involved with as a juvenile will encourage the jury to believe he had a propensity for doing illegal things with guns, when in truth the old case had no bearing upon what happened the day in question here. This is exactly what Rule 404 is supposed to prevent.

Additionally, Garcia may introduce evidence that it was illegal for Desmond to have a gun the day of the shooting because he was under indictment for a new case at the time. This argument does not even involve a prior adjudicated conviction, but rather an alleged offense of which Desmond was legally innocent. As explained above, the prejudice to Plaintiff's case that this evidence would pose outweighs any possible probative value and satisfies no 404(b) exception. In support of introducing this evidence, Garcia may argue that where felony possession of a firearm

is a proximate cause of a person's death, this is a complete defense to a wrongful death lawsuit, citing Ohio Revised Code § 2307.60. Garcia would be wrong. First of all, this affirmative defense is not available if the lawsuit is based upon an intentional tort or a constitutional tort. That is the case here, so the affirmative defense is not available. Ohio Rev. Code § 2307.60(B)(4); *see also King v. City of Columbus,* S.D. Ohio No. 2:18-cv-1060, 2021 WL 3367505, at *8 (Aug. 3, 2021).

Further, even if the statutory affirmative defense were available, this Court has already held that it only would only become relevant if a jury finds that Desmond was pointing a gun at Garcia when Garcia killed him. (Opinion & Order, ECF No. 53 at PAGEID#1259.) As the Court already held, if the jury believes that Desmond did not point a gun, then his possession of the gun could not have been a proximate cause of his own death. On the other hand, if the jury believes that Desmond was pointing his gun when killed, then the Plaintiff will lose this case anyway.  For this additional reason, any evidence that Desmond was not in lawful possession of his firearm is not relevant but rather is extremely and unfairly prejudicial.

For the same reasons that the Court should exclude Desmond's criminal history including convictions, indictments, and alleged disability status as to firearms, the Court should exclude similarly irrelevant and unfairly prejudicial evidence as to Plaintiff's witnesses. Devin Badley is going to testify as to what he experienced during the shooting when he was a teenager five years ago. No subsequent involvement in the criminal legal system that Devin may have had could have any relevance to that testimony. Desmond's family members are going to testify as to damages. If Desmond's family has any past or present involvement with the criminal legal system, it is similarly irrelevant to the harm they suffered from losing a brother, partner, or son. On the other hand, denigrating Desmond, his family, and his witnesses by casting them as criminals will prejudice Plaintiff's case. This case is about a young man's death, how it happened, and the

damages that resulted. He and his family deserve to have their dignity preserved during the trial, not to have their worst moments aired when these have no value to the jury.

Finally, for all these same reasons, evidence that Desmond or any of his witnesses were formerly or are presently incarcerated is inadmissible. This evidence would encourage the jury to infer a criminal propensity while having no bearing upon the questions at issue.

For all these reasons, the Court should exclude <u>all</u> evidence related to prior criminal convictions, indictments, weapons under disability, or current or prior periods of incarceration having to do with Desmond and any of his witnesses.

## II.     The Court should exclude references to whether Desmond Franklin was going to buy weed on the day of the shooting.

Record evidence suggests that on the day of the shooting, Desmond and Devin were out in their car running errands, including to pick up food for Desmond's partner and their kids. They were also planning to buy personal-use marijuana. The Court should exclude from this trial evidence about the marijuana. That evidence is not relevant to any claim or defense but on balance it is unfairly prejudicial. Desmond and Devin's destination that day does not impact any fact in the case at all, let alone the central question of whether Desmond was pointing his gun when Garcia killed him. By contrast, suggesting to the jury that these young men were in part driving around to buy weed could inflame juror prejudices about drug use. This could include evoking racial prejudice, introduce confusing questions about whether the purchase was legal or not at the time, or simply lead jurors to think that these were bad kids up to no good. Because Desmond and Devin's destinations or their errands have no bearing upon the central facts of this case, the Court should exclude argument or other evidence that they were going to buy marijuana. Fed. R. Evid. 401, 403.

**III.     The Court should exclude the testimony of third-party witness Jonathan Schubert.**

Garcia may seek to introduce testimony from a third-party witness to the moments before the shooting, the driver of a car near Garcia's and Desmond's cars, Jonathan Schubert. Garcia relied upon a declaration from Schubert in support of his Motion for Summary Judgment. (Declaration, ECF No. 44-8, PAGEID#755-57.) The declaration provides that in Mr. Schubert's opinion, right before the shooting, Desmond's car was "flying" down the road in order "to catch up with" Garcia's car, that Desmond "was aggressively trying to catch" Garcia, and that Desmond "wanted to have a confrontation with" Garcia. Schubert did not see the shooting but rather heard it. *Id.* He testified that he was "uncomfortable" with it.

The Court should exclude <u>all</u> testimony from Schubert for several reasons. First, the declaration and any trial testimony to the same effect is not "rationally based on the witness's perception" nor is it "helpful" to the jury, because it is inconsistent with the earlier statement that Schubert provided to police, and both are inconsistent with other reliable record evidence. Fed. R. Evid. 701(a) and (b); *see also* Notes of Advisory Committee (explaining that Rule 701's "objective" is "putting the trier of fact in possession of an accurate reproduction of the event.") Opinion testimony is not helpful to the jury when it addresses matters that are "equally within the competence of the jurors to understand and decide and thus is inadmissible under Fed. R. Evid. 701 and 702." *U.S. v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013), citing *McGowan v. Cooper Indus., Inc*., 863 F.2d 1266, 1272 (6th Cir. 1988).

In Schubert's recorded interview with police right after the shooting, he explains what he believes happened during the shooting, and it along with his declaration conflict with the video evidence, party testimony, and both parties' expert witness testimony. Examples of the confusing inaccuracies abound. Schubert reports that before the shooting, Garcia's car was stopping and starting as he drove down Pearl Road, which the video does not depict. (Interview, Pl.'s Exh. 4 in

support of Opposition to Summary Judgment, manually filed, at 3:50.) Schubert reports that Desmond's car "stop[ped]" and "cut[] off" Garcia's car, "block[ing]" it so that Garcia "ha[d] to stop," which the video does not depict and which Defense expert Matthew Noedel disagrees with. (*Id.* 4:06.) Schubert tells police he believes that at the time of the shooting, Garcia turned his entire body toward the passenger seat of his own car in a lying-down position, and that even though Schubert could see that, somehow, he never saw Garcia handle a gun. (*Id.* at 9:05). This conflicts with Garcia's own testimony. Schubert further says that "both cars' windows were down" during the shooting, but the video shows and the parties' experts agree that Desmond's window was fully up. (10:03.) Schubert shares that at the time of the shooting he believed that Garcia himself was involved in a "Hispanic / Hispanic" "gang" "type thing" in "that area", and that Garcia, Devin, Desmond, and bystanders "all knew each other" and were about to get into a "shootout" "because of the neighborhood" (although he did not want to "seem racist.") (6:30-50, 13:17, 15:07.) Most importantly, Schubert did not see into Desmond's car at all, making his testimony irrelevant to the key fact dispute in this case. (6:05, 13:57, 14:22-40.) In all these ways, Schubert's opinions about what happened are factually inaccurate compared with the video, the testimony of qualified experts, and Garcia himself. The testimony would not be "helpful" to the jury but rather would be confusing and misleading, even contradicting parts of the Defense's own case. Fed. R. Evid. 701.

Second, Schubert's testimony as summarized in his declaration would be improper lay opinion and he would lack foundation to provide it. Lay witnesses may not opine outside of their own personal observations, drawing conclusions that require specialized knowledge to accurately draw. Fed. R. Evid. 701. In other words, Rule 701 prohibits "proffering an expert in lay witness clothing." *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc.*, 533 F.3d 555, 561 (7th Cir. 2008), quoting Fed.

R. Evid. 701 (advisory committee notes). Further, no witness may testify outside of their own personal knowledge; they may not offer speculation or draw conclusions that invade the province of the jury. Fed. R. Evid. 602.

Here, as explained above, the Defense seeks to put on Schubert to buttress its specious theory that Desmond was chasing Garcia in his car with the intention to attack him. It is the Defense's prerogative to argue that as its theory of the case, but there is no admissible evidence to support it. Lacking admissible evidence, the Defense found a bystander who did not see the actual shooting, but who is willing to testify that he personally believed that Desmond was trying to catch up to and attack Garcia. There is no foundation for Schubert to speculate as to what Desmond was trying or planning to do. And what Schubert *does* say about his own observations is demonstrably wrong as discussed above. The jury can hear Garcia's experts can testify about the angles and distances between the cars and trajectories of the bullets, and the jury can watch the real-time videos of the same. Schubert's personal speculation lacks foundation and should have no role.

Third, Schubert's testimony would be substantially more prejudicial than probative and anything that is not prejudicial would be cumulative. Fed. R. Evid. 401, 403. As explained above, speculation as to whether Desmond was "aggressive" or "trying to catch" Garcia or concocting a plan to "have a confrontation" with him is unfairly prejudicial and inadmissible because it imputes motive to Desmond while Schubert has no personal knowledge of Desmond's state of mind. Any admissible testimony from Schubert would, then, be limited to what he personally saw and heard rather than his speculation. That testimony, in turn, would at minimum be cumulative because video evidence amply depicts the cars, their locations, and their speeds. Worse, the testimony would be prejudicial because of the inaccuracies described above; for example, testimony that Desmond's car was "flying" contradicts the video showing that both cars were driving slowly until

after the shooting.

The ultimate issue for the jury in this trial is whether they believe Desmond Franklin was pointing a gun when Garcia killed him or not. Two people saw that: Devin Badley and Garcia himself. Schubert did not. His testimony does not make any fact "of consequence" any "more or less probable" than it would be otherwise. Fed. R. Evid. 401. His testimony would instead allow the Defense to stack its witness list with an apparent uninterested third party for the purpose of speculating about what Desmond was up to in support of their otherwise groundless theory that Desmond was chasing Garcia to shoot him. The Court should exclude this witness.

## IV. The Court should exclude other agency determinations that Garcia's shooting was reasonable, non-criminal, or within policy.

Garcia may seek to introduce testimony that he was not disciplined related to this shooting, or that he was not indicted for killing Desmond, or otherwise that a law enforcement agency found the shooting to be non-actionable using whatever standard of review it applied. The Court should exclude all such evidence.

Presentation of evidence about a law enforcement department's failure to find policy violations or sanctionable conduct is misleading to juries in civil litigation. This is because the standards and analysis at play in administrative or grand jury proceedings are not the same standards or burdens of proof applicable in a lawsuit. *See, e.g., Andring v. Allstate Prop. & Cas. Ins. Co.*, No. 14-11086, 2015 WL 736353, at *1 (E.D. Mich. Feb. 20, 2015) ("Whether or not a person is deemed a suspect in a criminal investigation reflects the degree of proof necessary for a criminal conviction, not for civil liability…. A jury is unaccustomed to evaluating the differing burdens of proof in criminal and civil cases and is also inexperienced in evaluating reasons why a decision may be made not to prosecute."); *see also Kelly's Auto Parts, No. 1, Inc. v. Boughton,* 809 F.2d 1247, 1252-1253 (6th Cir. 1987) (quoting Galbraith v. Hartford Fire Insurance Co., 464 F.2d

225, 227 (3d Cir. 1972).) Here, the Court here should exclude evidence that the Cleveland Police Department or the Cuyahoga County Sherrif or BCI or the civilian review committee neglected to find that Garcia violated a policy when he shot Desmond. The Court should similarly not allow evidence that a grand jury failed to indict him. *See also* Fed. R. Evid. 401, 402, and 403.

## V.    The Court should exclude references to the general challenges or dangers of police work.

Garcia may seek to introduce evidence or argue that in general, police work is dangerous or difficult, such that it is understandable for police to be ready to accuse someone of a crime or even to shoot at them. Although police officer defendants commonly seek to introduce such evidence, it is inadmissible. *See, e.g. Palmer v. Allen*, 14-cv-12247, 2017 WL 218077, at *12 (E.D. Mich. Jan. 19, 2017). The general risks or challenges that police face as a feature of their work do not have any tendency to make any facts in this case more or less likely. *Id*. citing *Dyson v. Szarzynski*, 2014 WL 7205591, at *2 (N.D. Ill. Dec. 18, 2014). Instead, "testimony elicited solely to [arouse] the sympathy of jurors about the difficult task officers face could encourage jurors to make a decision based on something other than the facts of the case." *Ferreira v. City of Binghamton*, 2016 WL 4991600, at *12 (N.D.N.Y. Sept. 16, 2016). The Court should exclude evidence, argument, or insinuation about the general challenges or dangers of police work.

## VI.   The Court should exclude evidence of commendations, awards, and military history from any police officers who may testify.

The Court should bar Garcia from introducing evidence of Garcia's own, or of any other potential police officer witness's commendations or awards. "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Courts have regularly found that police awards and commendations are inadmissible as a general matter, unless there is some special reason for their relevance. *See United States v Brown*, 503 F. Supp. 2d 239 (D.D.C. 2007) (commendations

inadmissible where police officers charged with making false statements; *see also United States v Barry*, 814 F.2d 1400 (9th Cir. 1987) (commendations excluded); *United States v Nazzaro*, 889 F.2d 1158 (1st Cir. 1989) (same); *United States v Washington*, 106 F.3d 983 (D.C. Cir. 1997), (same); *Charles v. Cotter*, 867 F. Supp. 648, 659 n.6 (N.D. Ill. 1994) ("the court strongly suspects that evidence of defendants' commendations, awards or honors could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question."); *White v. Gerardot*, 2008 WL 4724000, at *2 (N.D. Ind. Oct. 24, 2008) (granting motion *in limine* to bar evidence of officer's awards as irrelevant); *Graham v. Bennett*, 2007 WL 781763, at *3 (C.D. Ill. Mar. 12, 2007) (similar). The Court should exclude any such evidence here.

## VII.    The Court should exclude evidence or argument as to Desmond Franklin's financial status, including his source(s) of income or former incarceration.

The Court should exclude any argument or evidence that Desmond Franklin was poor, or of the ways in which he tried to earn money for his family, or of periods of incarceration before his death during which he could not work. Generally, evidence concerning a party's financial status or poverty is "extraneous," and its introduction will improperly "inflame the prejudice of the jury." *See, e.g., Harris v. Mt. Sinai Med. Ctr.*, 2007-Ohio-5587, at ¶13. Where there is no specific reason to depart from that principle, the Court should exclude a party's income or financial status as irrelevant under Rules of Evidence 401 and 402 and because it is substantially more prejudicial than probative under Rule 403.

Here, Desmond's income or its source is not at issue because—as Plaintiff has confirmed to the Defense—the Estate is not pursuing damages for past or future wages. Desmond and his family were not wealthy people. He experienced financial hardship in his lifetime and a high wage was not one of the ways in which he supported his loved ones. However, Desmond's financial

situation, including periods of incarceration during which he did not earn a real wage, is irrelevant to any damages claim. This information could, however, unfairly predispose jurors against Desmond's character. Moreover, it is invasive and potentially humiliating. *See Johnson v. Kehl,* 2021-Ohio-2305 at ¶¶22-24 (Ohio App. 5th Dist.) (abuse of discretion to permit testimony of employment history which "painted appellant in a negative light.") For these reasons, the Court should exclude evidence or argument concerning Desmond's sources of income, financial status, or periods of incarceration or unemployment before his death.

**VIII.  The Court should exclude all references to Garcia's or the City's ability to pay a verdict, including references to any asserted taxpayer burden or to Garcia's or the City's inability to pay or poverty.**

The Court should exclude references to taxpayer money as it relates to Garcia's liability or ability to pay an award, or the City of Cleveland's ability to pay an award. Preliminarily, ability to pay is not relevant to compensatory damages. A defendant's financial status could possibly be considered in determining a level of *punitive* damages, *Johnson v. Howard*, 24 F. App'x 480, 488 (6th Cir. 2001), but "if unrelated to this point such evidence would be irrelevant and should be excluded." *Sullivan v. Detroit Police Dep't,* 2009 WL 1689643, at *3 (E.D. Mich. June 17, 2009); *see also Niles v. Owensboro Medical Health Sys., Inc.*, 2011 WL3205369, at *2 (W.D. Ky. July 27, 2011). The probative value of such evidence is therefore nothing and is substantially outweighed by the risk of unfair prejudice of causing the jury to artificially deflate a potential compensatory damages award. *See Lawson v. Trowbridge*, 153 F.3d 368, 379-80 (7th Cir. 1998).

Further, the Court should exclude statements or implications that recovery for the Plaintiff would come out of taxpayer money or burden taxpayers. Federal Rule of Evidence 411 excludes evidence of liability insurance. Appeal to taxpayer self-interest, either in the form of saving taxpayer dollars or appeals to concerns about reduction in services, are generally improper for the same reasons. *See, e.g. DuJardin vs. City of Oxnard*, 38 Cal.App. 4th 174, 45 Cal. Rptr. 2d 48

(1995) (argument about allocation of responsibility to public entities and effect on public services that will disappear was improper); *City of Springfield v. Thompson Sales Co*., 71 S.W. 3d 597 (Mo. S. Ct., 2002) (appeal to jurors' "pocketbooks" was prejudicial).

Finally, the Court should also exclude any argumentation or evidence of Garcia's or the City's purported inability or difficulty paying a verdict as to punitive damages, for the same reasons as above and also because Garcia has resisted supplying any evidence of his own ability to pay in discovery.

## CONCLUSION

Plaintiff requests that the Court exclude the above-discussed evidence *in limine* such that the parties may narrow their preparation to the issues properly before the jury.

Respectfully Submitted:

*/s/ Elizabeth Bonham*
FG + G
Terry Gilbert (0021948)
Sarah Gelsomino
(0084340) Marcus Sidoti
(0077476)
Elizabeth Bonham (0093733)
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
terry@FGGfirm.com
marcus@FGGfirm.com
elizabeth@FGGfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 21, 2025 I filed the foregoing using the Court's CM/ECF system

and that all parties will receive notice and service through that system.

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)